## EDWARD A. DeCOTTES AND WIFE, APPELLANTS, vs. JEFFERS, COTHRAN & CO., APPELLES.

Where a demurrer to a bill had been interposed, which was over-ruled and the defendant required to make answer, but failing to do so, a decree *pro confesso* was entered for the complainant, the defendant upon the appeal, can bring before this Court only the matter in the record which transpired *anterior* to his default.

Where the maker of a note executes to his sureties a deed of mortgage containing a personal covenant to indemnify and save harmless, upon his failure to pay the note, and a bill filed by the sureties to enforce the covenant, by a foreclosure of the mortgage; *Held*, that the payee of the note is not a necessary party to the suit.

DeCottes and Wife vs. Jeffers, Cothran & Co.—Opinion of Court. .

In such a case, the sureties may bring their bill to enforce the covenant, without having previously paid the debt.

In this case the original note of $2,000 had been reduced by payments to the sum of eight hundred dollars, at the instance of the maker and upon his representation that an *advance* of $200 was necessary to enable him to go on with his business, and thereby make provision for the payment of the whole debt, the sureties procured from the payees the said advance, and the amount being consolidated with the old balance, the note was renewed at sixty days for $1000. It was objected at the hearing, that this advance and consolidation constituted a new contract, and that the mortgage had been fully discharged ; *Held,* that however this might be between parties not privy to the contract, the objection would not hold as between the original parties to the mortgage.

Appeal from the Circuit Court of the Eastern Circuit for Duval County.

The facts of the case are set out in the opinion of the Court, to which reference is made.

*P. Fraser,* for appellants.

*Call & Fleming,* for appellees.

DuPont, J., delivered the opinion of the Court.

This is a suit in Equity, instituted in the Circuit Court of Duval County, by the appellees against the appellants, to enforce certain covenants contained in a mortgage of indemnity. The bill sets forth the following state of facts :

DeCottes, the defendant, being desirous of obtaining a loan from the Bank of Hamburg, in the State of South Carolina, procured the signature of the complainants, as sureties on the note, which was discounted by the Bank ; and in order to secure, indemnify and save them harmless from any loss, by reason of his failure to protect the said note and its renewals, he executed to them a mortgage upon certain real estate. · The covenant contained in the deed of mortgage is substantially by payment " or other lawful means to save, keep harmless and indemnify" the sureties.

After divers renewals of the same, the original note of two thousand dollars was, on the 6th of November, 1854, reduced to, and renewed for the amount of eight hundred dollars, at ninety days.  In the month of May following, and after the falling due of the last mentioned renewal, the sureties, who were merchants of the town of Hamburg, informed the appellant of the disinclination of the Bank to extend any further indulgence on the debt, and urged him to provide for the payment of the balance then due thereon.  In reply to this communication, the defendant declared his inability to meet the demand, unless he could receive an advance of two hundred dollars, to enable him to start his Saw Mill and pay the running expenses of the same ; in which event he would saw out one hundred thousand feet of flooring lumber and consign the same to them, out of the proceeds of which, they were to pay the notes.— Jeffers, Cothran & Co., with the view to aid DeCottes to accomplish this purpose, arranged with the Bank to make the advance of the two hundred dollars, and on the 26th of June, 1855, the over due note of $800 and this advance of two hundred dollars were consolidated, and a new note executed for the same by the parties to the original note, and the same was discounted by the Bank for sixty days.  The understanding on the part of DeCottes to saw and consign the lumber to his sureties was not executed, and the note remained unpaid.

On the 15th of January, 1856, the complainants filed their bill against DeCottes and wife, (who had renounced her right of dower in the premises,) alleging the foregoing facts, and further setting forth that the Bank was then urging upon them the payment in full of the last mentioned note, and asked for a foreclosure of the deed of mortgage and to be indemnified and saved harmless from the payment of the same.  It does not appear that at the date of the filing of

the bill, Jeffers, Cothran & Co. had paid the note, or that it was within their control; but it does appear from the decree, that *at the hearing*, the note was presented and filed as a part of the proofs in the cause.

On the 3rd of March, 1856, the defendant, DeCottes, filed a general demurrer to the bill, which being heard, was over-ruled on the 30th day of July, and he required to answer by the rule day in September following. On the last mentioned day a decree *pro confesso* for want of an answer was entered up, and on the first day of November, 1856, the final decree for a foreclosure and sale of the mortgaged premises was pronounced by the Chancellor.

In his petition of appeal, the appellant sets forth the following facts as grounds for a reversal of the decree, viz:

"First—That it appears from the said bill that the said plaintiffs have not paid the amount of the said note and therefore are not entitled to recover the same of your petitioner."

" Second—The said bill is for foreclosure of said mortgage and is not a bill *quia timet*, and if it were, it is defective for want of parties, the Bank of Hamburg being a necessary party to an effectual decree."

" Third—The special relief prayed is mainly for a decree in favor of the Bank of Hamburg, which is not a party to the bill."

" Fourth—Because it appears from said bill that a new contract was entered into between the complainants and your petitioner, whereby the complainants agreed to make further advances, not provided for in the mortgage, and whereby they took up the note of eight hundred dollars and made a new note for one thousand dollars in consideration of the promise of the petitioner to furnish a cargo of lumber. That the said note of one thousand dollars was not made in renewal of the original note, but was made in

pursuance of a new and independent contract, by which contract the said mortgage became null and void."

There are other grounds for a reversal stated in the petition of appeal, but as they are all supervenient to the judgment upon this demurrer, it becomes unnecessary to notice them for the reasons hereinafter stated.

In Betton vs. Williams (4 Fla. R. 11,) this Court expressly ruled, that when a demurrer to the bill had been interposed, which was overruled, and the defendant required to make answer, but failing to do so, a decree *pro confesso* was entered for the complainant, the defendant, upon the appeal could bring before this Court only the matters in the record which transpired *prior* to his default.

The Court say—"It is contended by respondents, that this appeal cannot be sustained, because the appellant, in the Court below suffered the bill to be taken *pro confesso*, and the final decree passed by default. This is undoubtedly the rule in Chancery in England, and which has been recognized and adopted as the correct rule in several of the States of the Union." (Citing 2 Smith Ch. Prac. 22; 1 Bland R. 12, 15; 8 Wend. R. 219; 25 Wend. R. 248; 12 John. R 293.) They further say—" We think such rule is consonant with reason and should be enforced here, so far as it can be made applicable to our practice." And further—" Mr. Betton was not in default until February rules, 1849; consequently we consider he has the right to enter his appeal and bring before this Court, the matters in the record prior to his default; the decree *pro confesso* and all other subsequent proceedings in this cause, no matter how erroneous they be, cannot be examined into upon his complaint."

The same doctrine was again recognized and sanctioned by the Court in the subsequent case of Megin vs. Filor et al, (4 Fla. R. 203:) They say—" It is true that this Court would refuse to entertain an appeal from a judgment or de-

cree entered by default or *pro confesso* in the Court below against a defendant, unless there had been some antecedent judgment on demurrer or otherwise, and even then, he would not be heard on the subsequent matter. He would be required to purge himself of the contempt there, before he could be heard here upon such a judgment or decree."

Applying the doctrine thus announced with respect to the effect of a decree *pro confesso*, it results that our enquiry in this case, must be limited to the decree over-ruling the demurrer, and if that judgment be found correct, the final decree must be affirmed, however erroneous it may chance to be, concerning the correctness of which however, we do not feel ourselves called upon or permitted to express an opinion.

In considering the several points set forth and argued at the hearing, as arising under the demurrer, we will somewhat reverse their order and examine first the objection of a want of proper parties.

It is contended that the Bank of Hamburg, being the payee and holder of the note, has an interest in the mortgage security and consequently is not only a proper, but an indispensable party to the suit. Without undertaking to decide whether or not this objection can be raised under the general demurrer of the defendant, we are very clear in the opinion that the Bank is not an indispensable party to the suit. The covenant sought to be enforced is one entirely and exclusively between the principal and sureties, in which the Bank is not a privy, and is not to be affected by the decree. Indeed it would result in extreme hardship to the Bank to compel it to litigate a matter which it was not privy to, and had not in contemplation when it agreed to make the loan to the defendant. For aught that appears, the Bank in making the loan relied exclusively upon the securety afforded by the personal credit of the makers of the

37

note, and had no knowledge of the existence of the mortgage of indemnity given by the principal debtor to the sureties on his note. To compel it now, contrary to its wishes, to engage in an expensive litigation, which is not essential to the protection of the debt, would be not only highly improper, but grievously burthensome.

It is insisted however, under this head, that unless the Bank be made a party to the suit, there might be danger of a misappropriation by the sureties, of the proceeds of the mortgaged property, and the defendant might be compelled to pay to the Bank the amount of the note, after the amount had been raised out of the property and furnished to the sureties. If such a misfortune should occur, it will be but the fruit of the defendant's own default, of which he will not be permitted to complain. For if any such danger was likely to arise from misplaced confidence in the integrity of his sureties, upon an appropriate allegation in his answer supported by sufficient proof, the Chancellor would cheerfully have so framed his decree as to have afforded him the most ample protection. Not having answered, but voluntarily submitted to a default, he will not now be permitted to complain of the decree in this respect.

The next prominent objection insisted upon is, that as the sureties had not paid the note at the date of the filing of the bill, they had no right to a foreclosure. It will be noted that the mortgage sought to be foreclosed, contains a personal covenant to " save, keep harmless and indemnify (the sureties) from the payment of the said note," &c. The law is too well settled to need the citation of authority, that upon the default of the principal debtor, the surety is at liberty to enforce the covenant anterior to a payment by himself. In a case of that kind however, care should be taken to frame the decree so as to insure the proper application of the proceeds of the mortgage to the payment of the debt.

The next objection is " that the note of one thousand dollars was not in fact a *renewal* of the original note, but was made in pursuance of a new and independent contract, by which contract the mortgage became null and void."

The argument used to sustain this objection was, that the two hundred dollars, was a separate and independent loan, and could not be viewed as a *further advance* upon the mortgage, there being in the deed no provision for such further advance ; and consequently when that amount became consolidated with the eight hundred dollars due upon the previous renewal, and the whole was incorporated in the note of one thousand dollars, the whole partook of the nature of this new contract, and had the effect to discharge the covenants of the mortgage.   However this might be in a contract between parties not privy to the contract, such as prior and subsequent mortgagees seeking to obtain a priority with respect to the proceeds of the mortgaged property (about which we intimate no opinion,) it is very clear to our minds that as between the original parties to the mortgage, the position is not sustainable upon any principle of law, equity or good morals.

The advance of the two hundred dollars grew out of and was intimately connected with the original transaction—it was made at the earnest solicitation of the principal debtor, and by his own admission, intended to enable him to comply with the covenant which he had entered into with his confiding sureties.   In a matter of suretyship, the utmost good faith ought ever to be observed, and it is the duty of a Court of Equity, professing to administer justice upon high moral principles, rigidly to enforce its observance whenever it can be done within the rules prescribed for the government of these Courts.

Upon a full consideration of the whole case, we are satisfied that no injustice has been done to the defendant by

the decree of the Chancellor. It is therefore the judgment of this Court that the final decree in this case be affirmed with costs.