( Decided June 2nd, 1858.)

# JACOB MARKELL *vs.* GRAYSON EICHELBERGER, Trustee of GEO. J. FISCHER and others.

A mortgage was executed "to *indemnify,* secure and save harmless" M., as
surety on a *specified* note given by the mortgagor to S., "from *all losses by
reason of his liability as security aforesaid.*" This note, after maturity, was

Markell *vs.* Eichelberger, Trustee of Fischer, *et al.*

placed in *bank* for collection, and the maker being unable to pay the whole, the *bank* agreed to, and did, *discount* a *new note* of the maker for the *balance*, with M. and another, as endorsers. At the time M. put his name to this new note, it was understood by him and the maker, that the money raised on it should be applied to pay the *balance* on the *old note* due S., which was done, and the old note paid. HELD:

1st. That the *liability* of M., on the *new note*, was a *continuation* of the *same liability* as that secured by the mortgage, and this mortgage is a subsisting security therefor, and is entitled to a preference over *subsequent* mortgages of the same property.

2nd. The mortgagor being insolvent, and the mortgaged property having been sold, under a decree in equity, and the proceeds brought into court, M. has the right to have them applied to this debt, though he has *not paid* the note to the bank.

APPEAL from the Equity Side of the Circuit Court for Frederick county.

This appeal is taken from an order of the court below, (NELSON, J.,) overruling exceptions filed by the appellant to, and finally ratifying and confirming, the auditor's report, distributing the proceeds of certain mortgaged property sold under a decree of said court, by Eichelberger, as trustee. The facts of the case are fully stated in the opinion of this court.

The cause was argued before ECCLESTON, TUCK and BARTOL, J.

*Samuel Tyler* for the appellant:

1st. As the claim due the Smiths was *closed* by funds obtained, upon the *security of Markell*, from the bank, and the *liability* of Markell as security for the claim due, at first, to the Smiths, and then transferred to the bank, was not, by such transfer, *exonerated*, but only *transferred*, the *mortgage* to Markell *remained* as a *security* to *indemnify* him against any *liability* for his security in the note to the bank.

This point is fully established by the case of *Chase vs. McDonald & Ridgely*, 7 *H. & J.*, 160. The deed, in that case, was given by Samuel Chase, the father, in 1809, to indemnify Ridgely, who was about to become the endorser of certain notes to the amount of $10,000, to be drawn by S. Chase,

Markell *vs.* Eichelberger, Trustee of Fischer, *et al.*

the son, in favor of T. Chase, another son of the grantor, and to be first endorsed by T. Chase, and then by Ridgely, and to be *discounted at the Union Bank of Maryland.* The recital of the deed is explicit, that the sons "are about to obtain a loan of $10,000 from the Union Bank of Maryland," and that "Samuel Chase, the elder, hath agreed to secure the payment of said notes, and to indemnify the said Nicholas G. Ridgely by reason of any endorsement made by him of the notes of the said Samuel Chase, the younger, not exceeding the sum of $10,000," then the conveyance to be void. Ridgely did become endorser of notes to the amount of $10,000, discounted at the Union Bank. But, some years afterwards, the Union Bank being unwilling to permit the notes to be renewed any longer, notes with Ridgely as endorser, were discounted at the City Bank of Baltimore, and the proceeds applied to close the debt due at the Union Bank. The court held, that as the debt due at the Union Bank was *closed* by funds *obtained from the City Bank,* the mortgage from Chase to Ridgely *remained* as a *security* to indemnify Ridgely against any *liability* for his *endorsement of the last mentioned notes.* This reason extends to the case now before this court. The claim to the Smiths was closed by funds obtained from the Farmers & Mechanics Bank, on Markell's security, because of Markell's liability for Fischer to the Smiths. The mortgage was given to indemnify against any loss by reason of that liability. The loss by the debt at the bank would certainly be by reason of that liability. It must be noted that Markell is indemnified against all and every loss, by reason not merely of his security, but by reason of his *liability* as security; extending the indemnity beyond the transaction in which Markell is primarily security to any transaction which may be the natural consequence of his security, in the ordinary course of business. The contingency on which loss might happen, that was in the minds of the mortgagor and mortgagee, was larger than the word *security* seemed to them to express. The word *security* might be confined to the original transaction, but the word *liability* rescues the intention from that narrow construction. Courts of equity must accommodate their rules of construction to the ordinary

course of business. They must consider what are the ordinary consequences likely to ensue, when they undertake to determine the liability of a security which the debtor intended to secure him against. Equity doctrine is not an arbitrary rule established *a priori* by the courts, to which human transactions must conform, but it is a rule which the transactions themselves dictate to the court, as the substantial justice between the parties. The relation of Markell to Fischer, and not of Fischer to the Smiths, is the proper point of view of this case. From this point of view, it is seen that the ordinary doctrine, that payment discharges the mortgage, does not apply to this case. The mortgage is not merely to secure the payment of the money to the Smiths, but to indemnify Markell against his liability. Unless, therefore, the money due the Smiths be paid in a way that relieved Markell from all liability incurred by his security for Fischer, the indemnity against that liability must continue. There is a radical difference between a stipulation to perform some specific act, as the payment of a sum of money intended to be by way of indemnity, and a general covenant to indemnify and save harmless. Fischer, in an action on his covenant, could not plead *that he had paid the sum of money due the Smiths.* The proper plea would be, *that Markell was not in any manner damnified by reason of his liability as security.* The mortgage is a pledge of the property to the full extent of the covenant contained in the recital and proviso of the deed. A court of equity, in dealing with securities, is not confined by the narrow, legal doctrine of contract, but acts upon the more enlarged doctrine of natural justice. The whole power of substitution, so freely exercised by courts of equity, in favor of securities, has no foundation in contract, but rests solely upon the basis of natural justice. Surely, then, the equity between Markell and the subsequent mortgagees, will authorize this court to hold the mortgage responsible for the claim transferred to the bank, the liability in the original transaction being the reason of Markell's security in this. Will it be maintained that the liability of a security is so entirely confined to the original transaction that by no change or substitution whatever, can the guaranty against

11    v. 12.

loss belonging to the security be extended to the substituted transaction? Such a decision would certainly be a revolt against the case of *Chase vs. Ridgely*, and a recoil against the progressive doctrine of ages. It would be adopting a rule of construction narrower than the cammon sense and the substantial justice of the matter.

2nd. The partial payment by Fischer, and the procuring another security with Markell, did not *extinguish* Markell's liability, but only *lessened* it. A partial payment of the debt does not release a mortgage, (4 *Kent*, 162,) neither does the obtaining another security.

3rd. The act of Assembly of 1825, ch. 50, has no bearing on this case. That act intended to provide against tacking. 1 *Gill*, 424, *Cole vs. Albers & Runge*. 3 *Md. Ch. Dec.*, 473, *Young's Estate*. A law that is grounded on a reason, obliges no further than the reason of it extends.

*In reply* to the 1st point of the appellees, it is insisted that the indemnity of Markell against *liability* is more comprehensive than that of Ridgely, in 7 *H. & J.*, against *endorsements*. The note to the Smiths is referred to in the mortgage to Markell merely as *descriptive;* to the 2nd point, that the *liability* of Markell was transferred to the bank; the case of *Brinckerhoff vs. Lansing*, favors the appellant, and not the appellee, if it has any bearing on the question in this case; to the 3rd point, that Markell has such an interest in the fund as entitles him to an appeal. The fact that Markell *has not paid,* will not authorize the court to deprive him of his indemnity. The fund might be the only means by which he could pay. If this court decides that the mortgage indemnifies Markell against his liability to the bank, such proceedings can be had in the court below as to apply the fund to Markell's indemnity. And to the 4th point, that the question between the classes of creditors is dependent on the question between Markell and Fischer.

*Grayson Eichelberger* for the appellees:

1st. The mortgage upon which the question in this case arises, was given on the 26th of November 1850, to indemnify

Markell against his liability as security for Fischer, on the note to the Smiths for $535. This note was not paid by Markell, the surety, but by Fischer, the principal, to whom, on its payment, it was delivered. Upon what principle, then, can the note of *the bank*, against Fischer, Markell and Bevan, be substituted for the Smith note, recited in the mortgage? It was not a *renewal* of the Smith note, for the facts show that the Smith note was not discounted by the bank, and, on maturity, renewed by the note in question, but was left with the bank *for collection*, and that Fischer, the principal, not being able to meet it at maturity, wholly, with his then means, contracted a *new debt*, with *new security*, and with a *new creditor*, for the purpose of paying his debt to the Smiths. This case is not within the principle of *Chase vs. McDonald & Ridgely*, 7 *H. & J.*, 161. That was the case of a mortgage to indemnify Ridgely, the security, against *"any endorsement"* of the notes of Chase, to an amount not exceeding $10,000, and it was properly held, that, under such a mortgage, Ridgely was protected thereby, so long as his liability for Chase, upon any note springing out of, or connected with, the original transaction, continued. That, moreover, was a mortgage given to secure him against a general endorsement to a specified amount, to be entered into thereafter, on notes *which were to be renewed from time to time;* the mortgage in this case was to indemnify Markell against any *existing* liability *on a specified note.*

2nd. The Smith note was not *transferred* to the bank, as contended for by the appellant's counsel, but, in the case of the note in question, which is sought to be introduced into the mortgage, there is a *new creditor, a new debt, and a new security*, thus bringing the case within the principle decided, by necessary inference, by Chancellor Kent, in *Brinckerhoff vs. Lansing*, 4 *Johns. Ch. Rep.*, 75, 76.

3rd. Conceding, for the sake of the argument, that the view presented by the appellant is correct, still he has not put himself in a position to claim the benefit of it. He has never paid the note in bank, nor any part of it, and, until he had done so, could not have filed a bill for sale or foreclosure, nor has he, until then, such an interest as authorizes him to appeal.

The note in question is still held and owned by the bank, and they have taken no appeal.

4th. This is not a question between Markell and Fischer, but between two different classes of the creditors of Fischer.

BARTOL, J., delivered the opinion of this court.

The facts in this case are very fully set out in the agreement of the solicitors, appearing in the record, and may be briefly stated as follows:

George J. Fischer was indebted to Corilla H. Smith and Philemon M. Smith in the sum of $535, on his promissory note, dated the 12th day of March 1850, and Jacob Markell was liable as his surety on said note. Fischer, in order "to indemnify, secure and save harmless said Markell from all loss by reason of his liability as security aforesaid," on the 26th of November 1850, executed to said Markell a mortgage, with the condition that the said Fischer should pay the aforesaid sum of money, with legal interest thereon, and should "well and truly indemnify and save harmless the said Markell from all and every loss by reason of his liability as security as hereinbefore recited," which mortgage was duly executed and recorded; after which the said Fischer executed another mortgage, conveying the same property to other persons, for the purpose of securing other creditors and sureties.

The note due Corilla H. and Philemon M. Smith was placed by the payees, after its maturity, in the Farmers & Mechanics Bank of Frederick county, for collection, with instructions to institute suit thereon, if not paid by a certain day. The cashier then told Fischer, if he would pay a part of the sum due on said note, the bank would discount a note for him, to enable him to pay the balance. Whereupon the said Markell, together with one Joseph Bevan, united with said Fischer in giving a note, dated November 8th, 1854, for $475, payable, in six months, to Thomas Morgan, cashier, or order, and the money raised by said note, together with the sum paid by Fischer, was applied to the payment of the note due C. H. and P. M. Smith. At the time Markell put his name on said note for $475, it was understood by him and Fischer, that the

Markell *vs.* Eichelberger, Trustee of Fischer, *et al.*

money to be raised upon it, was to be applied to the payment of the balance due on the note to the Smiths. The name of Bevan, thereon, was procured by Fischer, because the bank required another security or drawer; and the same remains unpaid, and is held by the bank. It is also admitted that Fischer is insolvent, and was generally known to be very heavily indebted at the time the said note was discounted.

The mortgaged property was sold under a decree of the Circuit Court for Frederick County, sitting in equity, passed upon a bill filed by prior incumbrancers, and the fund arising from the sale was brought into court. The cause being referred to the auditor, he stated an account, applying the proceeds of sale to the payment of the claims of prior mortgagees, and to parties claiming under the subsequent mortgage, to the exclusion of the said note for $475, held by the bank, on which said Markell is surety. And the said Markell filed exceptions to the auditor's report, claiming that he is entitled, under the mortgage of the 26th of November 1850, to have the said note for $475 paid out of the fund. The Circuit Court, by its order of the 25th of September 1857, overruled the exceptions, and ratified the auditor's account, and from that order this appeal *is prosecuted.*

It is admitted that the fund is insufficient to pay all the mortgage claims, and that the claims Nos. 11 and 12, allowed in the audit, are claims secured by the last mortgage, which was executed after that of the 26th of November 1850, had been executed and recorded.

We think this case is within the principle recognized and decided by the Court of Appeals, in the case of *Chase & McDonald, vs. Ridgely,* 7 *H. & J.,* 160. There the mortgage was given to indemnify Ridgely as surety on account of his prospective liability as endorser on certain notes to be given to the *Union Bank;* the notes were given, but were afterwards paid with funds obtained from the *City Bank,* upon notes endorsed by the mortgagee as surety. The court held, that the liability of the surety on the notes given to the City Bank, was covered by the mortgage; it was treated as a continuation of the same liability on the part of the surety, although the

notes originally given to the Union Bank, after being renewed from time to time, as specified in the mortgage, had been paid and surrendered. The court considered that the debt for which the surety was liable, remained unpaid. It was only transferred from one bank to another, and the indemnity secured to the endorser under the mortgage, remained.

That is a stronger case, in support of the appellant's views, than the one before us. Here the original note was held by the Farmers & Mechanics Bank of Frederick county, for collection. The bank consented to accept payment of a part, and to take a new note from Fischer for the balance. On the new note thus given for a part of the original debt, Markell, the mortgagee, remained liable as endorser and surety. We see no good reason why the mortgage should not stand as security to indemnify him from that liability.

If the note for $475 had been given to the Smiths as a renewal in part of the first, there could be no doubt that Markell's liability upon it would be covered by the mortgage, although no provision is made in the mortgage for renewals; the case of *Brinckerhoff vs. Lansing*, 4 *Johns. Ch. Rep.*, 65, cited by the appellee's counsel, establishes that position. Then what difference is there in principle growing out of the fact that the bank, which held the note as agent of the payees, made the arrangement whereby $475 of the debt remained unpaid, and Markell's liability to that extent was continued? We are of opinion that the mortgage to the appellant, of the 26th of November 1850, is a subsisting security to indemnify him for his liability on the note for $475, and the fund should be applied to the payment thereof, after satisfying prior liens.

The question next arises, is he in a position to claim the benefit of it, not having paid the note to the bank? In this case the principal debtor is insolvent, and the funds pledged by the mortgage to indemnify the surety are in court; it would, in our opinion, be inequitable to deny to the surety the right to have them applied to the payment of the debt. To use the language employed by the Chancellor, in *Chase & McDonald, vs. Ridgely,* "If the mortgage had been given to the bank, and not to *Markell,* equity would give him the benefit of it,

and surely if a court of equity would give him the benefit of the mortgage given to the bank, it will not deprive him of one given to himself." 5 *G. & J.*, 314.

In order that the auditor's account may be corrected, and further proceedings had, in conformity with the opinion of this court, the cause will be remanded.

*Order reversed and cause remanded.*

(*Decided* June 2nd, 1858.)