[Sac. No. 4917. In Bank.—February 28, 1935.]

PACIFIC NATIONAL AGRICULTURAL CREDIT CORPORATION (a Corporation), Appellant, v. R. A. WILBUR, Defendant; HAZEL HOKE SMITH, Respondent.

Erling S. Norby and Geo. R. Freeman for Appellant.

Rich, Weis & Carlin and Huston, Huston & Huston for Respondent.

THE COURT.—A hearing was granted in this case, after decision by the District Court of Appeal, Third Appellate District. Upon further consideration, we adopt the following portion of the opinion of Mr. Justice Plummer as the opinion of this court:

"This action was begun on August 27, 1931, to recover from the defendants the sum of $7,642.94, for and on account of the alleged conversion by the respondent of 1439 head of sheep. The defendant Wilbur defaulted, and the action thereafter was prosecuted against the respondent Hazel Hoke Smith.

"The undisputed facts disclosed by the record show that on the 5th day of July, 1927, the defendant Wilbur purchased from the defendant Smith a band of sheep consisting

of 1415 ewes and 24 rams on a conditional contract of sale; title to remain in defendant Smith until the sheep were all paid for. This contract was not recorded until July 8, 1930. On the 5th day of August, 1929, the defendant sold all of the sheep referred to in the contract of sale, together with the increase thereof while he was still indebted to the defendant Smith under the conditional contract of sale. The sheep were sold without the knowledge or consent of the defendant Smith. After the sale the defendant Wilbur owned approximately 1400 head of sheep. At this period Wilbur owed no money to anyone, save and except to the defendant Smith. The defendant Wilbur suggested to the defendant Smith that the 1400 head of sheep he then had be substituted for the sheep he had purchased from her under the conditional contract of sale. The defendant Smith agreed to this substitution, but no written contract was executed between them in relation thereto, nor was the original contract of sale modified in any particular. Wilbur continued to hold possession of the 1400 head of sheep just as he formerly had. The sheep were not in fact turned over to the possession of the defendant Smith, the transaction consisting solely of the oral agreement between the two parties. The plaintiffs in this action had no knowledge of such oral agreement until long after the transactions hereinafter set forth.

"During the months of September and October, 1929, Wilbur purchased approximately 1486 head of sheep from various sources. The money for these purchases was furnished by the plaintiff under an agreement with Wilbur. At the close of 1929 Wilbur had on hand the 1486 head of sheep just referred to, and also the 1400 head of ewes mentioned in the oral agreement between the Parties. On March 18, 1930, the defendant Wilbur and his wife made, executed and delivered to the plaintiff a promissory note in the sum of $25,000, with interest thereon at the rate of 7 per cent per annum. This note was due November 9, 1930, and to secure the payment thereof, executed and delivered to the plaintiff a chattel mortgage on the sheep in his possession, which chattel mortgage included the 1400 head of sheep referred to in the oral agreement between the parties.

"On the 25th day of July, 1930, the defendant Smith, after giving notice to the defendant Wilbur, with her agents,

went through the sheep described in the chattel mortgage dated March 18, 1930, and selected 1439 head of sheep, without any reference being made as to whether the ones selected were or were not the sheep possessed by Wilbur at the time of the oral agreement herein referred to. These sheep were set apart by themselves, but remained on premises controlled by Wilbur until after the 15th day of August, 1930. Subsequently the defendant Smith sold the sheep and they were removed by the purchaser. Between July 25, 1930, and September 15, 1930, Wilbur purchased various bands of sheep from different sources with funds furnished by the plaintiff. On September 13, 1930, the defendant Wilbur and his wife executed and delivered to the plaintiff a second chattel mortgage for the sum of $25,000, bearing interest at the rate of 6 per cent per annum. At the time of the execution of this mortgage the defendant Wilbur was still indebted to the plaintiff in the sum of $7,642.94 on the note dated March 18, 1930. The second note and mortgage included the sum remaining due upon the first note and mortgage, which, with additional advances for the purchase of additional sheep, brought the indebtedness of the defendant Wilbur to the plaintiff up to the sum of $35,000. The sheep described in the mortgage of September 13, 1930, covered all the sheep described in the mortgage of March 18, 1930, which had not been disposed of, including the 1439 head taken by the defendant Smith on July 25, 1930. The sheep covered by the mortgage of September 13, 1930, were located both in Colusa and Sutter counties. The chattel mortgage was recorded in both counties and registered in the office of the secretary of state.

"On March 20, 1930, the plaintiff pledged the note of March 18, 1930, together with the chattel mortgage securing its payment, to the Intermediate Credit Bank of Berkeley, to secure advances made by the latter bank to the plaintiff. After the execution of the second note and mortgage on September 13, 1930, the plaintiff pledged a new note and mortgage to the Intermediate Credit Bank of Berkeley. Thereafter, on October 25, 1930, the Intermediate Credit Bank of Berkeley released the mortgage dated March 18, 1930.

"On April 23, 1931, the plaintiff discharged its indebtedness to the Intermediate Credit Bank of Berkeley and took a reassignment of the note and mortgage dated September

13, 1930. At the time of the beginning of this action there was still due on this note and mortgage the sum of approximately $24,500, exclusive of the interest. All of the property referred to in the mortgage has been taken by other persons than the plaintiff, and the plaintiff is without any security whatever for the payment of the note dated September 13, 1930. Judgment was entered for the respondent, and the plaintiff appeals.

"The court found that the value of the 1439 head of sheep taken by the respondent on the 24th day of July, 1930, was the sum of $7,987. The court made the following findings, the correctness of which is challenged by the appellant, which findings are numbered as follows, to-wit:

" '5. It is not true that said note and mortgage of September 13th, 1930, was made as a renewal of the first described chattel mortgage attached to said second amended complaint and marked Exhibit "A".

" '6. It is not true that said mortgage of September 13th, 1930, was never intended as a satisfaction or discharge of said first described chattel mortgage.

" '7. It is not true that said mortgage of September 13th, 1930, described the same sheep described in said mortgage, marked Exhibit "A" and additional sheep, and it did not include the description of the fourteen hundred thirty-nine (1439) head of sheep referred to in said complaint.

" '8. It is true that on or about the 25th day of July, 1930, the defendant, Hazel Hoke Smith, took into her possession the said fourteen hundred thirty-nine (1439) head of sheep described in said complaint, but it is not true that said defendant, Hazel Hoke Smith, converted said sheep, or any of them.'

▆ "While the contention is made that the chattel mortgage dated March 18, 1930, did not include the 1439 head of sheep taken by the defendant Smith on the 25th day of July, 1930, no evidence is called to our attention in support thereof. The record shows that on July 25, 1930, when the defendant Smith took the 1439 head of sheep, the defendant Wilbur had on hand no sheep except those described in the mortgage dated March 18, 1930. This is shown by the uncontradicted testimony of the defendant Wilbur: 'Q. Now, at that time Mrs. Smith took 1439 head of sheep from you on July 25, 1930, did she take any of

the sheep described in that mortgage (of March 18, 1930) ? A. She did. Q. How many of the sheep that she took were described in that mortgage (of March 18, 1930) ? A. All the sheep.' And that the sheep were likewise described in the chattel mortgage of September 13, 1930, appears from the uncontradicted testimony of the defendant Wilbur as follows: 'Q. Now, do you recall, Mr. Wilbur, an inspector coming to the Houch ranch to inspect your sheep after Mrs. Smith had come in and segregated 1439 head? A. Yes, sir. Q. At the time that inspector was there, were those same sheep on the Houch ranch? A. Yes, sir. Q. Did he count them as your sheep? A. Yes, sir. Q. Did you tell him anything to the contrary? A. No, sir. Q. Then, when the mortgage was made up, which is dated September 13, 1930, were those 1439 head of sheep included in that mortgage? A. Yes, they were.' The testimony as to the different brands borne by the various bands of sheep in nowise controverts the foregoing testimony.

██ "The finding of the court that the sheep covered by the oral agreement were not included in the mortgage dated September 13, 1930, is directly contrary to the uncontradicted testimony. The finding of the court, likewise, that the defendant Hazel Hoke Smith did not convert the sheep to her own use is shown to be improper by the uncontradicted testimony that she took and sold said number of sheep covered by the chattel mortgages executed and delivered to the plaintiff by the defendant Wilbur.

██ "The right of the plaintiff to recover in this action depends upon whether the note and mortgage dated September 13, 1930, was a renewal of the note and chattel mortgage dated March 18, 1930, and not a payment of the original indebtedness or a release of the lien created by the first chattel mortgage. The alleged error of the trial court consists in holding that the second note and mortgage was a payment in satisfaction of the original indebtedness, in addition to finding against the uncontradicted evidence to which we have referred.

"To clarify the situation somewhat we may state that the plaintiff is a corporation organized and existing under the laws of California, having its principal place of business in the city of Fresno, being organized for the purpose of loaning money to purchasers of livestock, and obtaining funds

for such purpose from the Intermediate Credit Bank of Berkeley, which was authorized by an act of congress to make loans for the purposes just mentioned.

"The testimony of the witness Ramsey shows that the plaintiff, when an application was made for a loan on livestock, would send an inspector to look over the stock, report the same to the company, and then the amount of money required or desired, if approved, would be advanced and a note and chattel mortgage taken to cover the same. If the plaintiff did not have on hand sufficient funds to make the loan, the note and mortgage would be assigned to the Intermediate Credit Bank of Berkeley; that these mortgages were renewed from year to year, taking new paper and including the balance that might be due on account of previous notes and mortgages, the sum due being always included in the subsequent mortgage; that this procedure had been followed for several years.

"As we have stated, the record shows that the note and mortgage dated March 18, 1930, was assigned to the Intermediate Credit Bank of Berkeley, and, likewise, the note and mortgage dated September 13, 1930. The balance due on the note and mortgage dated March 18, 1930, was entered into, and became a part of the note of September 13, 1930, to-wit, in the sum of $7,642.94. The testimony of the witness Ramsey shows that this sum had never been paid; that it was simply incorporated into the September note and mortgage.

"It is further shown that at the date of the execution of the note and mortgage of March 18, 1930, the plaintiff had no knowledge of anyone claiming any interest in any of the mortgaged sheep.

"Our attention has not been called to any testimony, and a careful search of the transcript fails to disclose any testimony indicating that there was an agreement or intention on the part of the plaintiff in this action, in taking the note of September 13, 1930, to consider the same as a payment or discharge of the lien due on the note of March 18, 1930, and the lien created by the chattel mortgage executed on the same date, though the transcript does show that sometime after the execution of the note and mortgage dated September 13, 1930, the record of the mortgage dated March 18, 1930, is marked 'discharged'.

■ "That the oral agreement referred to in the transcript by which it was sought, between the defendants Wilbur and Smith, to substitute the 1400 head of sheep for those originally covered by the contract of sale, and which the defendant Smith had disposed of, is absolutely void and of no effect, is shown by reference to section 3440 of the Civil Code, which specifies that 'every transfer of personal property . . . is conclusively presumed if made by a person having at the time the possession or control of the property, and not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things transferred, to be fraudulent and therefore void, against . . . encumbrancers in good faith subsequent to the transfer'. The uncontradicted testimony shows that there was no change of possession; that the only transfer consisted of an oral agreement, of which the subsequent encumbrancer was not advised.

■ "The contention that this action was not prosecuted by the real party in interest is without merit. This clearly appears from the case of *Graham* v. *Light,* 4 Cal. App. 400 [88 Pac. 373]. That was a case where an assignment had been made of personal property to secure an indebtedness, but before the action was begun, there had been a reassignment. The court held, 'where there was a reassignment by the pledgee to the pledgor pending suit before trial, it was proper to render judgment in favor of the pledgor upon the note without the necessity of bringing in the pledgee as a party to the action'. In the present case there had been a reassignment of the note and mortgage upon which this action is based, prior to the institution of suit, and the lien created by the first mortgage as well as the amount due upon the first note were carried into and became a part and parcel of the second note and mortgage, as the authorities hereinafter cited establish.

■ "The respondent calls our attention to a number of cases holding that the discharge of a mortgage raises the presumption of satisfaction of indebtedness and the release of the lien. The application of the principles enunciated in the various cases cited cannot be made here, for the simple reason that the action at bar involves the renewal of a note and mortgage carrying into it the indebtedness and lien created by a prior note and mortgage, where the

presumption is directly contrary to the contention advanced by the respondent.

"In *White* v. *Stevenson,* 144 Cal. 104 [77 Pac. 828], while the opinion does state that the entry of satisfaction of an old mortgage is presumptive evidence that it has been satisfied, it is not conclusive. The case, however, involves the execution of a new mortgage. And it is further held: 'That the acceptance of a new note and mortgage as a renewal of a former note and mortgage, in the absence of evidence of any agreement that the new note and mortgage should be accepted in payment and satisfaction of the old, does not operate as an extinguishment or discharge of the latter.'

█ "Again, the contention of the respondent that the release of the mortgage dated March 18, 1930, in the record, extinguished the lien, is fully answered in the case of *Palmer* v. *Emanuel,* 77 Cal. App. 766 [247 Pac. 609]. We quote therefrom the following: 'In *Comptoir D'Escompte* v. *Dresbach,* 78 Cal. 15, at page 20 [20 Pac. 28, 30], the court said: "It has been repeatedly held by this court that the acceptance of a note for a debt does not discharge the debt unless expressly agreed to be payment; that in such case the right of action on the debt is suspended until the maturity of the note given, and suit may be brought on the original debt in case of the nonpayment of the accepted note." The burden of showing that an express agreement has been made rests on the party relying on it, and the presumption is that the later notes were not taken in absolute payment. (*Bridge* v. *Connecticut Mut. Life Ins. Co.,* 167 Cal. 774, 781 [141 Pac. 375].) A receipt in full does not prove the existence of the agreement. (*Comptoir D'Escompte* v. *Dresbach, supra.*) Neither does a formal release. (*Tolman* v. *Smith,* 85 Cal. 280, 290 [24 Pac. 743].) Nor that the note was marked canceled. (*Steinhart* v. *National Bank,* 94 Cal. 362, 367 [28 Am. St. Rep. 132, 29 Pac. 717].) The foregoing rules were applied to a debt secured by mortgage. (*Van Sandt* v. *Alvis,* 109 Cal. 165 [50 Am. St. Rep. 25, 41 Pac. 1014].) In *White* v. *Stevenson,* 144 Cal. 104, at page 108 [77 Pac. 828, 830], the court said: "The acceptance by the plaintiff of the note and mortgage of 1895 as a renewal of the note and mortgage of 1890, or in substitution therefor, did not of itself operate as an

extinguishment or discharge of the latter. One executory agreement is not extinguished by the execution of another between the same parties; nor is a security for an obligation merged in another security of the same degree which is accepted for the same obligation. It is a well-settled rule that, in the absence of an agreement to that effect, a promissory note is not paid by the execution of another note, but that the time for its payment is thereby merely suspended until the maturity of the new note." ' That case likewise holds that it is the duty of the party alleging payment, satisfaction and discharge, by reason of such entry, to make proof thereof, and that the taking of the new note and mortgage was, by agreement, that the same should operate as a payment of the note, and a discharge of the lien. Nothing of that kind appears in the transcript in this case. There is no testimony of any agreement to the effect, or any intimation of any intention whatever that the note and mortgage dated September 13, 1930, should be considered as a payment and discharge of the indebtedness and lien created by the note and mortgage dated March 18, 1930.

"The holding in the Palmer case is in accordance with the ruling had in the case of *Parker* v. *Tout*, 207 Cal. 590 [279 Pac. 431], in which case it was held that without an agreement to such effect, where the indebtedness, secured by a first note and mortgage, was carried into a second note and mortgage, the lien created by the first mortgage would be continued. It appears, also, in the case of *Parker* v. *Tout*, *supra*, that the later note and mortgage included sums in addition to the amount specified in the first note and mortgage. The lien was held to exist, limited, however, to securing the amount of the indebtedness still remaining due, as evidenced by the first note and mortgage.

"In the case of *United States* v. *Grover et al.*, 227 Fed. 181, where a similar question was under consideration, the court held: 'So long as the same debt, or some part of it, subsists, the presumption ordinarily is that the new mortgage is intended as a renewal of the old, and a continuance of the same security. (*Sloan* v. *Rice*, 41 Iowa, 465; *Markell* v. *Eichelberger*, 12 Md. 78; *McDonald* v. *McDonald*, 16 Vt. 630.) Nor does the including in the new mortgage of an additional indebtedness not covered by the first discharge the lien of the old mortgage, so far as the indebtedness

secured thereby remains unpaid, unless such be the purpose of the parties. (*London & S. F. Bank* v. *Bandmann*, 120 Cal. 220 [52 Pac. 583, 65 Am. St. Rep. 179]; *De Cottes* v. *Jeffers*, 7 Fla. 284.) And very clearly the difference in the rate of interest between the two mortgages where, as here, the rate is less in the last mortgage than in the first, cannot be regarded as material to indicate an intention to create a new obligation and abandon the security of the old. (*Kern* v. *Hotaling*, 27 Or. 205 [40 Pac. 168, 50 Am. St. Rep. 714].)'

"The reduction of the rate of interest, just as appears in the present case, was held not to be material.

"In *Howard* v. *First National Bank of Hutchinson*, 44 Kan. 549 [24 Pac. 983, 10 L. R. A. 537], where the same questions were being considered as are now before this court, it was held: 'The taking of a new note and mortgage on personal property to secure an indebtedness already evidenced by a note and secured by a mortgage on the same property does not, even when the first note and mortgage are canceled, operate to discharge the lien of such first mortgage. (*Packard* v. *Kingman*, 11 Iowa, 219.) Nothing but payment in fact of the debt, or the release of the mortgage, will discharge a mortgage. (*Crosby* v. *Chase*, 17 Me. 369; *Hadlock* v. *Bulfinch*, 31 Me. 246.) In *Gregory* v. *Thomas*, 20 Wend. (N. Y.) 19, the court says: ''But it is said that the defendant's second mortgage extinguished the first; and consequently, being put to stand exclusively on the last, which was in 1835, the plaintiff's mortgage of the previous September is let in. The argument is against all the books, ancient and modern. Adjudications of several centuries upon such cases, of every variety of form, in England, in this State, and in neighboring states, settle the proposition that a subsequent security for a debt of equal degree with a former, for the same debt, will not, by operation of law, extinguish it.'' '

"In 33 American Law Reports, beginning on page 149, are collected a number of cases supporting the rule that the taking of a second mortgage without any agreement to the contrary, is not a payment, but is simply a means of carrying the original indebtedness and lien into the second mortgage. The citation of cases is preceded by the following general statement: 'It is a general rule that the cancellation of a mortgage on the record is not conclusive as to its dis-

charge, or as to the payment of the indebtedness secured thereby. And where the holder of the senior mortgage discharges it of record, and contemporaneously takes a new mortgage, he is not, in the absence of paramount equities, held to have subordinated his securities to an intervening lien, unless the circumstances of the transaction indicate this to have been his intention, or such intention upon his part is shown by extrinsic evidence.' This statement of the general rule is supported by a long list of cases. It is further stated in the same annotation, as follows: 'As between the parties and the holders of liens existing against the property at the time a senior lien is discharged and another lien taken in renewal, it has been held that the transaction does not amount to a payment, and will not affect the priority of the lien, at least unless the subsequent lienholder has acted to his prejudice in the matter by relying upon the apparent discharge of the senior lien.' Nothing of that kind appears in the present action. The 1439 head of sheep were taken by the respondent several months before either the execution of the second mortgage or the cancellation on the record of the first mortgage.

"The same rule is set forth in the text in 11 C. J. 683, to-wit: 'The validity of a chattel mortgage is not affected by the fact that the mortgagee holds independent collateral security, and the taking of a new or additional security to secure the same debt and covering the same property as a prior chattel mortgage does not, of itself, and in the absence of an agreement or understanding to that effect, operate to release or discharge the prior mortgage, or to destroy the priority obtained by virtue of the original mortgage. The same rule has been held to apply where the second mortgage is for an increased amount, or where it secures an additional claim, or covers additional property.'

"The testimony in the instant case shows that the second mortgage was taken to continue the lien created by the first mortgage, but also to create a lien on additional sheep for which the plaintiff had advanced money to the defendant Wilbur in order to enable him to purchase the same. The record likewise shows that cancellation was not entered of the first mortgage until some time after the lien on the sheep in question, created by the first mortgage, had been carried into the second mortgage, and also the amount

of money remaining due upon the first note, carried into and evidenced by the second note.

■ "The respondent further contends that the location of the sheep covered in the mortgage is insufficient. In this particular, without going into the evidence as to the location, we think the rule set forth in 11 C. J. 457, applicable, which rule is as follows: 'As against third persons the description in the mortgage must point out the subject-matter so that such persons may identify the chattels covered, but it is not essential that the description be so specific that the property may be identified by it alone, if such description suggests inquiries or means of identification which, if pursued, will disclose the property covered. This rule is based upon the maxim, that is certain which is capable of being made certain. So a description is sufficient if it may be aided by parol proof and the property covered by the mortgage identified.' See, also, *United Bank & Trust Co.* v. *Powers*, 89 Cal. App. 690 [265 Pac. 403]; 5 Cal. Jur. 54.

■ "The respondent also contends that there should be credited on the balance of $7,642.94, due on the note dated March 18, 1930, and carried into the September note, the sum of $4,500, which the court found was paid on account of the September note. We fail to find in the record any testimony showing payment of the sum of $4,500. The record does show that on September 28, 1930, the sum of $4,000 was realized from the sale of 500 head of Oregon sheep, and applied on the note. This amount, as contended for by the appellant, should properly be credited against the amount advanced for the purchase of the same sheep, and not as against any balance due on the March note."

It follows that the judgment should be and it is hereby reversed.

Rehearing denied.