[Civ. No. 284. Fifth Dist. Dec. 3, 1963.]

MERCED PRODUCTION CREDIT ASSOCIATION, Plaintiff and Respondent, v. P. S. BAYER, Defendant and Appellant.

Moody & Nelson, Gilbert Moody and Oliver K. K. Nelson for Defendant and Appellant.

Griswold & Barrett, Stephen P. Galvin and George Barrett for Plaintiff and Respondent.

CONLEY, P. J.— Manuel J. Gomes, a Merced County farmer and dairyman, and his wife, Mary, borrowed money from the plaintiff, Merced Production Credit Association, for the purchase of hay, and executed a migratory chattel and crop mortgage on April 16, 1959, to secure the repayment of the loan. Included in the mortgaged property were 38 cows, described according to age, brand, and breed, "together with all increases both by natural increase and by all purchases"; the farm machinery owned by the mortgagors and the crops grown on their specifically described real property in Merced County were also included. This mortgage was duly recorded in the office of the County Recorder of Merced County on April 21, 1959.

In the fullness of time and without notice to the mortgagee, all of the originally described cattle were sold by the Gomes family, and the controversy in this case turns on the question whether the lien of the mortgage attached to other cattle, namely, 27 cows, placed with Mr. and Mrs. Gomes on their Merced County ranch by the defendant, P. S. Bayer, and which according to the respondent, became "increases"

to their herd by purchase within the meaning of the mortgage. The trial court held that the instrument did cover all of these cattle, and it rendered judgment in favor of the plaintiff as against the Gomeses for the full amount of the indebtedness remaining unpaid and attorneys' fees, and against P. S. Bayer in the sum of Twelve Hundred Forty-Four and 39/100 ($1,244.39) Dollars, that being the unpaid balance on the Gomeses' note; the court further found that plaintiff was the owner of a certain fund representing the sale of six of these cows held by the Atwater Livestock Auction Yard, with the proviso that such monies, when delivered to plaintiff, should constitute a *pro tanto* payment of the larger sum specified; the money judgment against Bayer was based on a theory of conversion by Bayer of some 20 cows, which he had formerly placed with Gomes, but which he later took into his own possession contrary to the claimed rights of the mortgagee. Mr. Bayer appealed from the judgment; no appeal was filed by Mr. and Mrs. Gomes and the judgment is final as to them.

Appellant makes the following contentions for a reversal:

1) That the original mortgage itself was void because it did not conform with alleged statutory requirements, and that, therefore, though recorded, it gave no notice of its existence to Mr. Bayer;

2) That the judgment is erroneously "saddling" Bayer with a personal debt he did not incur;

3) That title to the cows was at all times in Bayer, and that the mortgage, therefore, did not cover this livestock;

4) That the mortgage is not legally applicable to this after-acquired property because of alleged failure to comply with the provisions of section 2977 of the Civil Code.

The claim that the mortgage was absolutely void, and that it, therefore, gave no notice of its existence to Mr. Bayer is based on the facts that the location of the cattle is not more particularly specified, that no street address of the mortgagor is given, and that the cattle are not sufficiently described. Respondent argues that this contention can not be considered because it was never made an issue in the pretrial conference order; a reading of the order seems to support respondent's objection, but in any event the contention of appellant is without merit.

Section 2956 of the Civil Code sets forth the following simple form of a mortage of crops and chattels:

"This mortgage, made the ——— day of ———, in

the year _____, by A B, of _____, mortgagor, to C D, of _____, mortgagee, witnesseth:

"That the mortgagor mortgages to the mortgagee (here describe the property), as security for the payment to him of _____ dollars, on (or before) the _____ day of, _____, in the year _____, (or, as security for the payment of a note or obligation, describing it, etc.) A B."

It will be noted that the section does not require any more specific address of the mortgagor or mortgagee than the county of their residence or any specific statement of location within the county of the mortgaged property. In the present instrument, Mr. and Mrs. Gomes are described as residing or having their principal place of business within the County of Merced, State of California, and the Merced Production Credit Association's office is stated to be at Merced, California; in connection with the crop mortgage, the real property in Merced County owned by the mortgagors is described as follows: "In Hilmar Colony Section 14, Township 6 South, Range 10 East, 15.36 acres of W 35 acres of Lot 75 S½ of W½ of Lot 76 and S½ of E 5 acres of Lot 75."

 As is said in the leading case of *Pacific Nat. Agr. Credit Corp.* v. *Wilbur*, 2 Cal.2d 576, at page 589 [42 P.2d 314], quoting from 11 Corpus Juris 457: "' "As against third persons the description in the mortgage must point out the subject-matter so that such persons may identify the chattels covered, but it is not essential that the description be so specific that the property may be identified by it alone, if such description suggests inquiries or means of identification which, if pursued, will disclose the property covered. This rule is based upon the maxim, that is certain which is capable of being made certain. So a description is sufficient if it may be aided by parol proof and the property covered by the mortgage identified." ' "

*Genger* v. *Albers*, 90 Cal.App.2d 52, 57 [202 P.2d 569], holds: ". . . no particular method of description is necessary, nor is it essential that the description be sufficient to identify the property without the aid of parol evidence." And the opinion in *Security First Nat. Bank* v. *Haden*, 211 Cal.App. 2d 459, 463-464 [27 Cal.Rptr. 282], states: "In *United Bank & Trust Co.* v. *Powers*, 89 Cal.App. 690, 699 [265 P. 403], it is said: 'The rule is well settled that where a chattel mortgage of record contains a sufficient description, which, by putting parties upon inquiry, will enable them to identify

and ascertain the property mortgaged, the mortgage will not be held void for uncertainty (Jones on Chattel Mortgages, § 64; 5 Cal.Jur., p. 54), where it is stated that a description of property is sufficient if it is such as to enable third parties, by inquiry, to identify the property covered by it. Or, as said in Cobbey on Chattel Mortgages, section 170: "A description which will enable third persons to identify the property, aided by inquiries which the mortgage itself indicates and directs, is sufficient." ' "

Any reasonable person having before him the data contained in the recorded migratory chattel and crop mortgage should be able readily to identify and locate a dairy farmer and his wife owning specifically-described agricultural land in Hilmar Colony, Merced County. The description of the cows contained in the mortgage is sufficient; it shows the number of cattle, the kind or class, the age, the brand, if any existed, and the breed. The contention that the mortgage was void for any of the reasons advanced is disingenuous and captious.

The second argument mentioned above is equally so. The judgment did not hold Mr. Bayer responsible for the contractual debt of the Gomeses, but awarded plaintiff the amount of damage which it suffered through the conversion of cattle by Bayer; this figure was in fact the actual damage suffered by the loaning agency through the acts of Mr. Bayer.

The third point raised by appellant, as stated above, is that the mortgage never took effect as to the cattle, which had been placed on the Gomes property by Bayer, for the reason that he at all times retained title to them and that his document entitled "Cow Contract Purchase Lease" showing that alleged fact took precedence over the mortgage. The evidence in the case was that the 27 cows were not all delivered at the same time by Mr. Bayer to Mr. Gomes, but that there was a series of transactions and that Mr. Gomes paid in full for several of the cows prior to the execution of any document evidencing a contract between the parties. As to those cows, uncertain in number because the testimony does not clearly show the facts in this respect, title passed to Mr. Gomes and at that instant the mortgage took effect. After these initial transactions, an attempt was made through the execution of the "Cow Contract Purchase Lease" to indicate that there was a conditional sale of all of the cows formerly owned by Bayer, and at that time, with Gomes' consent,

Bayer placed his brand on all of the 27 cows. However, the mere branding of cattle not owned by the brander does not serve to convey title to him, and if it be claimed that the sale of the earlier cows was reversed and such cattle were resold by Gomes to Bayer, such transaction would be void, because there was no change of possession. (Civ. Code, § 3440; *Pacific Nat. Agr. Credit Corp.* v. *Wilbur, supra,* 2 Cal.2d 576, 584.)

 With respect to the document which was finally executed purporting to show a conditional sale of all of the cattle supplied and furnished by Bayer, such transaction was held by the trial court to be void as against the lien of the mortgage due to the fact that the document was never recorded. Section 2980.5 of the Civil Code relating specifically to livestock contracts provides in part as follows: " (b) Unless any such contract is recorded in accordance with subsection (d) of this section within 10 days after the contract is executed, every provision therein reserving title or property in any such chattels to the vendor after possession of the chattels is delivered to the vendee shall be void as to any purchaser, creditor or encumbrancer who, without actual knowledge of such provision, in good faith and for value purchases the chattels from the vendee or acquires a security interest therein or lien thereon by pledge, attachment, levy or mortgage, before the contract is so recorded, and as to any other creditor who, without actual knowledge of such provision, in good faith and for value becomes a creditor after possession of the chattels is delivered to the vendee and before the contract is so recorded, and as against any such purchaser, creditor or encumbrancer title or property in any such chattels shall be conclusively presumed to have been transferred to the vendee unless the contract is so recorded.

" (c) Without limiting the generality of subsection (b) of this section, for the purposes of this section a mortgagee, under a mortgage of livestock or other animate chattels which provides that such mortgage shall cover or become a lien on any such chattels subsequently acquired by the mortgagor, shall be deemed to acquire a lien upon any such chattels, the possession of which is thereafter delivered to the mortgagor under any contract as above defined, at the time possession thereof is acquired by the mortgagor, and such lien shall be prior and superior to the right, title or interest of the vendor under any such contract unless the contract is recorded within 10 days after the contract is executed."

It is clear, therefore, that if the mortage sufficiently cov-

ered after-acquired property, it would take precedence over any rights of Bayer by reason of the "cow contract" which he purported to enter into with the Gomes family.

The last point argued by appellant is that there was not a sufficient lawful coverage of after-acquired property in the mortgage; in this connection the appellant relies upon his construction of the provisions of section 2977 of the Civil Code, which reads as follows: "A mortgage may be given of live stock, or other animate chattels, title to which is acquired by the mortgagor subsequent to the execution of the mortgage, through the use of funds loaned or to be loaned; or otherwise, the repayment of which is secured or to be secured in whole or in part by such mortgage, and it shall be a sufficient description of such live stock, or other animate chattels, if the number thereof as nearly as may be reasonably ascertained at the time the mortgage is executed, the place where the same will be ordinarily located while owned by the mortgagor, the marks and brands that are or shall be placed upon the same, if any, and, as nearly as may be ascertained at the time the mortgage is executed, the general kind or class of the same, are stated in such mortgage. Any such mortgage, when duly executed and filed or recorded as required by law, shall constitute notice thereof to all parties."

As respondent suggests, the particular form of the code section seems designed, at least primarily, for application to a mortgage which is given to secure a loan specifically made for the purpose of purchasing the livestock referred to in the mortgage. That, of course, is not the situation here as the mortgage was given to secure a loan made to the Gomes dairy for the purchase of hay. The code section does not say that no other description of mortgaged property would be legal or proper; when it states that an inclusion of specified information "shall be a sufficient description," it does not mean that no other possible description could be reasonably or legally made. It should be kept in mind that the law does not require an impossibility; at the time the mortgage was given no one knew what the "increases" of the herd would actually be or whether they would ever come into existence. The number thereof could not be "reasonably ascertained" at the time the mortgage was executed, or what marks or brands might have been placed upon such cattle, if any; we are thus left to discover from the general laws applicable to such situation whether the provisions of a mortgage of this kind are legally effective.

The case of *Bank of California* v. *McCoy*, 23 Cal.App.2d 192, 193-194 [72 P.2d 923], is persuasive authority of the propriety of this form of description. After pointing out that it is entirely proper and legal in California to include after-acquired property, even property not *in esse*, as the subject matter of a chattel mortgage, the court in its opinion states that where the chattel mortgage contained the description "... and other livestock and other personal property now or hereafter belonging to the mortgagor, . . ." it properly covered 200 head of sheep acquired by the mortgagor after the giving of the mortgage. We hold that the description of after-acquired cattle by purchase in the present mortgage is sufficient to cover the cows placed on the Gomes property by Mr. Bayer.

The judgment is affirmed.

Brown (R. M.), J., and Stone, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 29, 1964.