[No. B087056. Second Dist., Div. Seven. Jan. 30, 1996.]

LAWYERS TITLE INSURANCE CORPORATION, Cross-plaintiff and Appellant, v.
SEYMOUR FELDSHER et al., Cross-defendants and Respondents.

COUNSEL

Billet & Kaplan, Terry S. Kaplan and Michael K. Dewberry for Cross-plaintiff and Appellant.

David M. Rosman for Cross-defendants and Respondents.

OPINION

JOHNSON, J.—Appellant, Lawyers Title Insurance Corporation (Lawyers Title), is the assignee of a lender whose junior lien on real property was lost

when respondents, Seymour Feldsher and Carol Feldsher (the Feldshers), foreclosed upon their senior lien at a nonjudicial foreclosure sale. Lawyers Title brought suit against the Feldshers, seeking to have its assignor's loan equitably subrogated to a lien senior to the Feldsher loan which was retired with the assignor's loan funds.

The trial court granted the Feldshers' motion for summary judgment, finding Lawyers Title was not entitled to equitable subrogation due to its assignor's actual knowledge of the senior liens and his culpable and inexcusable neglect in extending the loan without ensuring the Feldshers' had first agreed to subordinate their loan to his. We affirm.

## FACTS AND PROCEEDINGS BELOW

In January 1990, Seymour Feldsher sold a business he owned called DPK Vending to Dominick Razzano and Razzano's company, Golden State Music Company, Inc. Razzano's obligations under the purchase and sale agreement were secured in part by a trust deed recorded in favor of the Feldshers on commercial real property owned by Razzano located at 1535-1537 Foothill Boulevard in La Canada, California.

As part of the purchase and sale agreement two senior encumbrances totaling $950,000 were subordinated to the Feldsher trust deed.[1] Formal subordination agreements were executed and recorded in conjunction with the Feldsher trust deed for the sale of DPK Vending. However, three encumbrances senior to the Feldsher trust deed remained: (1) A first trust deed securing a note in the principal amount of $265,000 in favor of Glendale Federal Savings and Loan Association maturing in 1999; (2) a second trust deed securing a note in the principal amount of $210,000 in favor of Nathan and Edna Ostrin payable in September 1990; and (3) a third trust deed securing a note in the amount of $50,000 in favor of Walter and Judith Yoho, also payable in September 1990.

As part of the purchase and sale agreement, Feldsher agreed to subordinate his $750,000 trust deed on the La Canada property "to a new note secured by a new first Deed of Trust, not to exceed Two Hundred Fifty

---

[1]The two subordinated loans secured by the La Canada property were each in the amount of $475,000, and in favor of Joyce Reineke and Albert Razzano respectively.

Thousand Dollars ($250,000)" in the event Razzano wanted to refinance the La Canada property to pay off the existing senior encumbrances.[2]

Bernard M. Greenberg, doing business as Creational Loans, is a hard money lender who has made hundreds of loans. On August 29, 1990, he made a new $300,000 loan to Razzano secured by a trust deed on the La Canada property. Greenberg believed the proceeds of his loan would be used in part to retire the $210,000 second trust deed in favor of the Ostrins which became payable in September 1990. Greenberg also believed his new loan would take the place of the Ostrin second trust deed and therefore be senior to the $750,000 fourth trust deed in favor of the Feldshers. Greenberg's understanding was based in part on conversations he had with Razzano who told him some senior liens had been subordinated.

Greenberg obtained a title policy from Lawyers Title. Just prior to the closing of the loan transaction Lawyers Title received an escrow order indicating the Greenberg trust deed should be recorded senior to the Feldsher trust deed. Lawyers Title issued Greenberg a title policy erroneously showing two trust deeds from Razzano to Greenberg, one senior to the Feldsher trust deed, and one junior.[3]

In fact, the Feldshers were never asked to subordinate their trust deed to the Greenberg trust deed and it was not subordinated to the Greenberg trust deed.

Razzano defaulted on his payments under the purchase and sale agreement for DPK Vending. On December 12, 1990, Feldsher caused a trustee's sale to be held under the Feldsher trust deed. Feldsher purchased the La Canada property at the trustee's sale and Greenberg's security interest was foreclosed out. The Feldshers learned of the Greenberg trust deed after the foreclosure sale.

In February 1991, Greenberg filed a complaint against Lawyers Title for indemnity under the title policy. Lawyers Title cross-complained against Feldsher, seeking to impose and foreclose upon an equitable lien on the La

---

[2] In an earlier amendment to escrow the parties instead agreed: "In the event Buyer (Razzano) wants to refinance the existing loans on this property, Seller (Feldsher) agrees to subordinate his interest subject to the senior loans, not to exceed $250,000." The language of the amendment to escrow was subject to the approval of Feldshers' attorney. The language in the later sales and purchase agreement was changed, as noted above, to clarify Feldsher only agreed to subordinate his trust deed to a new *first* trust deed, and then only in an amount not to exceed $250,000.

[3] The personnel involved in the title insurance policy transaction are no longer employed by Lawyers Title's agent.

Canada property. On April 15, 1992, Lawyers Title paid Greenberg $222,000 and Greenberg assigned his claim against Feldsher to Lawyers Title.

On August 11, 1992, Lawyers Title filed a second amended complaint as Greenberg's successor-in-interest. The complaint alleged Lawyers Title indemnified Greenberg for the loss of his security interest in the La Canada property and therefore Lawyers Title was subrogated to the rights of Greenberg vis-à-vis the Feldshers.

On March 18, 1994, the Feldshers moved for summary judgment. The Feldshers argued that based on the undisputed facts they were entitled to judgment as a matter of law. They argued Lawyers Title was not entitled to equitable subrogation because Greenberg's actual knowledge of the Feldshers' trust deed precluded the equitable remedy as a matter of law. In addition, the Feldshers argued Greenberg was chargeable with "culpable and inexcusable neglect" because he did not make certain a subordination agreement had been in fact obtained from the Feldshers before concluding the loan transaction.

In response Lawyers Title argued actual knowledge of an existing encumbrance cannot in and of itself constitute culpable and inexcusable neglect as a matter of law. Lawyers Title also contended the Feldshers should not be unjustly enriched based on the lender's and title insurer's mistakes. Both the motion and opposition were supported by documentary and testimonial evidence.

On April 15, 1994, the trial court found there were no triable issues of material fact and entered summary judgment in favor of the Feldshers.[4] This appeal followed.

---

[4]In its minute order the trial court explained: "The central issue concerning this motion is whether Lawyers Title and Greenberg are 'not chargeable with culpable and inexcusable neglect.' That is, are they precluded from asserting equitable subrogation because they are chargeable with culpable and inexcusable neglect. The determination of this issue centers upon whether actual knowledge of the encumbrance constitutes culpable and inexcusable neglect.

"The controlling law in California and in this District is found in *Smith* v. *State Savings & Loan Assn.,* 175 CA3d 1092 [223 Cal.Rptr. 298] (1985). The *Smith* case states as follows: 'equitable subrogation will be denied to a new lender who has actual knowledge of the junior encumbrance.'

"It is undisputed that Lawyers Title/Greenberg had actual knowledge of the Feldsher Trust Deeds. Evidence presented concerning the escrow instructions does not create disputed facts concerning the actual knowledge. The escrow amendment is dated 12/29/89 and is superseded by the purchase agreement, dated 1/8/90, which is a complete and integrated document.

## DISCUSSION

"Summary judgment is properly granted when the evidence in support of the moving party establishes that there is no material issue of fact to be tried. (Code Civ. Proc., § 437c; *Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46]; *Mann* v. *Cracchiolo* (1985) 38 Cal.3d 18, 35 [210 Cal.Rptr. 762, 694 P.2d 1134]; *Johnson* v. *Berkofsky-Barret Productions, Inc.* (1989) 211 Cal.App.3d 1067, 1071 [260 Cal.Rptr. 67].) The trial court must decide if a triable issue of fact exists. If none does, and the sole remaining issue is one of law, it is the duty of the trial court to determine the issue of law. (*State Farm Fire & Casualty Co.* v. *Eddy* (1990) 218 Cal.App.3d 958, 964 [267 Cal.Rptr. 379].)

"Appellate review of summary judgment is limited to the facts contained in the documents presented to the trial court. This court exercises its independent judgment as to the legal effect of the undisputed facts disclosed by the parties' papers. (*Worton* v. *Worton* (1991) 234 Cal.App.3d 1638, 1046 [286 Cal.Rptr. 410].)" (*Coca-Cola Bottling Co.* v. *Lucky Stores, Inc.* (1992) 11 Cal.App.4th 1372, 1377 [14 Cal.Rptr.2d 673].)

*The Extent and Nature of Greenberg's Knowledge of the Feldsher Trust Deed Precludes the Application of Equitable Subrogation in This Case.*

One of the first cases in California to address the issue of equitable subrogation was *Shaffer* v. *McCloskey* (1894) 101 Cal. 576 [36 P. 196]. In *Shaffer* v. *McCloskey*, *supra*, cotenant purchasers of a parcel of real property each executed a purchase money mortgage. One of the cotenants, without the knowledge of the other, executed and recorded a deed of trust on his half interest in the land. Thereafter the cotenant conveyed his remaining interest to the other cotenant who satisfied the purchase money mortgage. (101 Cal. at p. 578.)

The Supreme Court held the cotenant who paid off the mortgage was entitled to be subrogated to the rights of the mortgagee as against the holder of the deed of trust, thus according him a priority position. The court reasoned the beneficiary of the deed of trust took his interest with full knowledge of the mortgage. In addition, the court found the cotenant, in retiring the mortgage, intended his payment would inure to his benefit and not to the benefit of an unknown security interest. The Supreme Court

---

"There are disputed facts and issues concerning 'unjust enrichment' and the equities involved in this case. However, these disputed facts are not relevant concerning culpable and inexcusable neglect and the issue of actual notice. . . ."

concluded there was no equitable ground on which the beneficiary of the deed of trust was misled or could complain, as he was left in the exact position he would have expected to occupy when the trust deed was taken. (101 Cal. at pp. 580-581.)

Since the decision in *Shaffer* v. *McCloskey, supra,* 101 Cal. 576, the doctrine of equitable subrogation has been applied in a variety of contexts beyond cotenancy. For example, in *Darrough* v. *Herbert Kraft Co. Bank* (1899) 125 Cal. 272 [57 P. 983], the doctrine was applied against a judgment creditor. In *Darrough* the plaintiff purchased real property and paid off the seller's trust deed. The trust deed was reconveyed to the plaintiff and notice of reconveyance recorded. The plaintiff had no actual knowledge a judgment had earlier been recorded against the property. He brought suit against the assignees of the judgment to have the judgment subordinated to his rights under the trust deed and promissory note. (125 Cal. at p. 274.)

The Supreme Court concluded the plaintiff's complaint stated a cause of action for equitable subrogation. The court reasoned "a junior lienholder shall derive no advantage over a senior lien where such senior lien has been paid off and canceled by the owner of the premises to which the liens attached without actual knowledge, on the part of such owner, of the existence of such junior lien[,] and that it will be presumed that such owner made the payment for his own benefit and not for the benefit of the junior lienholder, and for the protection of his interests equity will treat such owner as the assignee of the original senior lienholder, and will revive and enforce such senior lien for his benefit." (125 Cal. at pp. 274-275.)

The defendants argued the plaintiff should be denied the remedy of equitable subrogation because the plaintiff "was fully advised of the facts" as the judgment had been recorded. The court rejected the contention constructive knowledge of an intervening lien operated as a bar to equitable subrogation. "The constructive notice inferred from the docketing of the judgment is of no value here and does not estop the [plaintiff] to urge that the note was canceled and not assigned because of his mistake arising out of an absence of all knowledge as to the existence of the judgment." (125 Cal. at p. 275.)

The Supreme Court concluded equitable subrogation was appropriate because the defendants were not misled to their prejudice by any act of the plaintiff and their judgment lien was "of no less value to them on that account than when it first attached." (125 Cal. at p. 276.)

The doctrine of equitable subrogation has also been applied in favor of a lender. In *Simon Newman Co.* v. *Fink* (1928) 206 Cal. 143 [273 P. 565], one

of the defendants secured chattel mortgages on the same farm equipment and farm production from a bank, as well as from one of the bank's officers personally. These mortgages were recorded. In addition, the bank officer had extended the defendant other unsecured loans. The defendant was unable to meet his obligations. He sought to consolidate the loans with a new loan from the plaintiff. After reviewing the status of the loans with the defendant bank officer, the plaintiff only agreed to fund a new loan to retire the loan to the bank and refused to pay off the unsecured loans the bank officer had extended personally. (206 Cal. at p. 145.) At trial the plaintiff denied any knowledge of the second mortgage secured by the same farm equipment held by the bank officer. An officer of the plaintiff testified he believed the second was only a renewal of the first in favor of the bank. The trial court found the plaintiff was entitled to be subrogated to the rights of the defendant bank and the Supreme Court affirmed.

On appeal the defendant argued against equitable subrogation on the basis (1) the plaintiff knew of the second mortgage, (2) was simply a volunteer and not a person in whose favor the doctrine of equitable subrogation may be invoked, and (3) the plaintiff was inexcusably negligent in failing to conduct a search of the records, among other arguments.

The Supreme Court adopted a revised rule for determining the circumstances under which a lender may be entitled to the remedy of equitable subrogation. "The general rule respecting the rights of persons who advance money to pay off encumbrances is stated in 27 American & English Encyclopedia of Law, second edition, at page 247, as follows: 'One who advances money to pay off an encumbrance on realty at the instance of either the owner of the property or the holder of the incumbrance, either on the express understanding, or under circumstances from which an understanding will be implied, that the advance made is to be secured by a first lien on the property, is not a mere volunteer; and in the event the new security is for any reason not a first lien on the property, the holder of such security, *if not chargeable with culpable and inexcusable neglect*, will be subrogated to the rights of the prior encumbrancer under the security held by him, *unless the superior or equal equities of others would be prejudiced thereby*, and to this end equity will set aside a cancellation of such security, and revive the same for his benefit.' " (206 Cal. at p. 146, italics added.)

Applying this rule the court found the plaintiff was not a mere volunteer because it paid off the encumbrance at the request of both the lender and the borrower.

Next the court considered whether the plaintiff's failure to search the records and apprise itself of the facts constituted culpable and inexcusable

neglect, such that the doctrine of equitable subrogation should be unavailable. The court concluded it would not under the facts and equities of the case. However the court implied the conclusion might be different if the plaintiff had actual knowledge of the second mortgage secured by the same property. "Whether a failure to make a search of the records would preclude the right to subrogation which the plaintiff otherwise might have had, it is unnecessary to determine. That such a right would not be so affected in the absence of actual knowledge is intimated in the case of *Darrough* v. *Herbert Kraft Co. Bank*, 125 Cal. 272, [*supra*]. In the present case the trial court was clearly justified in finding the equities in favor of the plaintiff in spite of plaintiff's failure to inform itself from the records. The defendant Fink should not be heard to say that plaintiff was negligent because it did not search the records, when by his own conduct in failing to disclose material facts when he was under a duty to speak he impliedly represented that no other facts existed, and thereby misled the plaintiff into changing from a position which it would not have surrendered had it known all the facts." (206 Cal. at p. 147.)

The rule announced in *Simon Newman Co.* v. *Fink*, *supra*, 206 Cal. 143 is still being applied today to determine whether a lender has satisfied the prerequisites for equitable subrogation. (See, e.g., *Grant* v. *De Otte* (1954) 122 Cal.App.2d 724 [265 P.2d 952] [attorney who advanced money at client's request to protect client's real property from foreclosure and waste entitled to assert lien higher in priority than other lien claims against the property where the real property also secured his fees]; *In re Kemmerrer* (1952) 114 Cal.App.2d 810 [251 P.2d 345, 35 A.L.R.2d 1393] [persons who paid decedent's last medical bills and funeral expenses not mere volunteers and entitled to equitable subrogation]; *Katsivalis* v. *Serrano Reconveyance Co.* (1977) 70 Cal.App.3d 200 [138 Cal.Rptr. 620] [lender who refinanced loan entitled to be equitably subrogated to the original loan without regard to the intervening homestead recorded by the borrower who benefited from the refinancing].)

In the present case the trial court relied on the decision in *Smith* v. *State Savings & Loan Association* (1985) 175 Cal.App.3d 1092 [223 Cal.Rptr. 298] in granting summary judgment in favor of the Feldshers. In *Smith*, the property involved was a 32-unit condominium conversion project. In a tax-deferred exchange transaction Smith exchanged property he owned in Stockton, California, for 32 notes and deeds of trust secured by the condominium units. Smith's deeds of trust were recorded fourth in priority. In the event the owner wanted to refinance the senior liens, Smith agreed to subordinate his trust deeds to a new first trust deed, but only on certain terms and conditions.

The defendant provided new financing for the condominium project. The owner of the condominium project and defendant agreed the refinancing would be secured by a new first trust deed. The defendant provided financing to retire the three encumbrances senior to Smith's. Smith was not a party to this agreement and the defendant had no actual knowledge of Smith's fourth trust deeds. (175 Cal.App.3d at p. 1095.) The defendant filed suit seeking to be equitably subrogated to the three encumbrances which were senior to Smith's. The trial court denied relief and the appellate court reversed.

The appellate court rejected Smith's contention the defendant should be treated as a mere volunteer because it had no prior interest in the property. Citing *Katsivalis* v. *Serrano Reconveyance Co., supra,* 70 Cal.App.3d at page 210, the court reiterated the rule that one who advances money at the request of a debtor to pay off an encumbrance with the understanding the advance will be secured by a new trust deed to replace the original liens is not a mere volunteer to whom the remedy of equitable subrogation should be denied. (175 Cal.App.3d at p. 1099.)

The court also rejected Smith's contention the defendant's failure to discover the recorded trust deeds constituted the type of "culpable and inexcusable neglect" which will justify denial of equitable subrogation. The court stated: "*Although equitable subrogation will be denied to a new lender who has actual knowledge of the junior encumbrance*, it has long been the rule in California that the fact the junior encumbrance was recorded will not by itself bar equitable subrogation. [Citations.]" (175 Cal.App.3d at p. 1098, italics added.) The court found the equities favored equitable subrogation as Smith bargained for a fourth priority position and application of the doctrine left him in exactly the same position as before. (175 Cal.App.3d at p. 1097.)

Relying on this language in *Smith* the trial court found Lawyers Title was not entitled to equitable subrogation in part because it was undisputed Greenberg had actual knowledge of the Feldsher trust deed prior to completing the loan transaction.

Lawyers Title argues actual knowledge of the Feldsher trust deed should not, as a matter of law, bar its claim for equitable subrogation. Lawyers Title refers the court to no authority to support its argument. Nevertheless, our independent research reveals Lawyer's Title's argument finds some support in the Supreme Court's decision in *Copp* v. *Millen* (1938) 11 Cal.2d 122 [77 P.2d 1093]. In *Copp* the defendant purchased a parcel of land and gave the plaintiff security instruments in exchange. The instruments were recorded. A

few months later the defendant sold the land to a Mr. Russell but did not mention the previous encumbrances on the land. Russell had no actual knowledge of the encumbrances. He took possession of the property and eventually paid all amounts due under the purchase contract. The contract for the purchase and sale of the property was not recorded.

The defendant defaulted under the security instruments and arranged with the plaintiff to replace the old loans with a new consolidated loan. The plaintiff agreed in part because a title report indicated there were no intervening liens of record. Thereafter the defendant defaulted on the refinanced loan. The plaintiff sought to foreclose on the property and named the defendant and Russell as defendants. The trial court found the plaintiff had actual knowledge of the contract of sale between the defendant and Russell and denied the plaintiff's request to have the refinance loan equitably subrogated to the original security instruments.

The Supreme Court reversed. It found *"some knowledge or means of knowledge* of the existence of other person's [*sic*] rights in the property does not in every case preclude the court from granting the relief sought. So that if, notwithstanding the mortgagee had some knowledge or notice, the intervening lienholder is not prejudiced by the continuance of the priority of the original mortgage and is in no different position than he would have been had the release not been recorded, equity will place the parties in their original position." (11 Cal.2d at p. 130, italics added.)

The court found there was evidence in the record to sustain the trial court's finding the plaintiff had actual knowledge the property had been sold by the defendant to Russell and also knew Russell was in possession of the property. However, these facts standing alone were insufficient to deny the plaintiff equitable relief as a matter of law because there were no facts ". . . the plaintiff knew or should have known that Russell's unrecorded contract to purchase was not subject to the plaintiff's mortgage." (11 Cal.2d at p. 130.) Because the trial court precluded the plaintiff from introducing critical evidence, and because of other procedural errors, the Supreme Court reversed the matter for further proceedings.

Thus, the lesson from *Copp* v. *Millen, supra*, 11 Cal.2d 122, is "some" knowledge of an intervening lien will not automatically preclude a party from invoking the remedy of equitable subrogation, provided the interests of the intervening lienholder are not prejudiced. The question remains whether the extent of Greenberg's knowledge of the Feldsher trust deed precludes Lawyers Title from taking advantage of the equitable doctrine in this case.

Based on the undisputed facts and evidence provided by the parties in support of and in opposition to the motion for summary judgment, we conclude the trial court did not err in denying Lawyers Title the right to equitably subrogate the Greenberg loan to the original second trust deed.

Here it is undisputed Greenberg had constructive as well as actual knowledge of the critical facts concerning the Feldsher trust deed. Greenberg knew his trust deed would be junior to the Feldsher trust deed unless Feldsher agreed to—as well as executed and recorded an agreement to—subordinate his trust deed to Greenberg's trust deed. Greenberg admitted he took no affirmative steps to personally secure a subordination agreement from Feldsher.

Moreover, there is no evidence Razzano actually agreed to secure a subordination agreement from the Feldshers. According to Greenberg, he intended his trust deed to be senior to the Feldsher trust deed. However, when asked what prompted him to believe there was an agreement to subordinate the Feldsher trust deed, Greenberg testified he could not recall. He stated: "I just heard. From whom, I don't know. I just heard that there was some subordination. Whether it was Feldsher, Reineke, Albert Razzano, or whoever, I don't know, or Cunningham." As noted above, Reineke and Albert Razzano did subordinate their trust deeds to the *Feldsher* trust deed. However, Greenberg presented no evidence of an agreement with Razzano, the Feldshers, or anyone else, to subordinate the Feldsher trust deed to his.

In addition, Greenberg acknowledged he personally inspected and approved all escrow documents prior to the closing of escrow. As an experienced lender Greenberg should have realized the documents did not include a subordination agreement from the Feldshers. Nevertheless, Greenberg completed the escrow and extended the loan without taking affirmative steps to ensure his interests were protected through a subordination agreement on the Feldsher trust deed.

Greenberg's actual knowledge of the status of the Feldsher trust deed is considerably greater than the plaintiff's knowledge in *Copp* v. *Millen, supra*, 11 Cal.2d 122 who did not know, and could not learn through recorded instruments, whether the intervening purchase and sales contract was subject to the earlier security instruments in her favor. Greenberg's failure to take the necessary steps to either secure a subordination agreement or prevent the escrow from closing without such an agreement demonstrates negligence far more culpable than the mere failure to search the records for an intervening lien. (See, e.g., *Darrough* v. *Herbert Kraft Co. Bank, supra*, 125 Cal. 272.)

Nevertheless, Lawyers Title argues it should be granted equitable subrogation to prevent the Feldshers' unjust enrichment. Because proceeds from the Greenberg loan were used in part to retire the Ostrin $210,000 second trust deed which was senior to the Feldsher trust deed, the Feldshers were not required to pay off this amount when they foreclosed on the property. Therefore, Lawyers Title argues the Feldshers would receive a windfall if it is not entitled to equitable subrogation.

When viewed in this light it would appear the equities favored Lawyers Title's position. However, other facts before the trial court tended to indicate the Feldshers would suffer prejudice if Lawyers Title is allowed to subrogate its rights to those of the senior trust deed. As Lawyers Title points out, the Feldshers bargained for the fourth position in priority when they entered the purchase and sale agreement for DPK Vending. However, the contract specifies the $210,000 second trust deed and the $50,000 third trust deed were due and payable within nine months, leaving only the $265,000 first trust deed senior to the Feldsher trust deed. As Feldsher testified in his deposition, he considered the second and third trust deeds temporary as they were scheduled to be paid off within months.

In the purchase and sale agreement the Feldshers agreed to subordinate their trust deed to a new first trust deed, not to exceed $250,000, in the event Razzano wanted to refinance the three trust deeds senior to the Feldsher trust deed. Mr. Feldsher testified he agreed to this arrangement because he knew the La Canada property was worth at least $1 million and he knew his $750,000 trust deed would not be jeopardized if there was only one trust deed of $250,000 senior to his. In his declaration, Mr. Feldsher testified he would not have agreed to subordinate his trust deed to Greenberg's trust deed.

On August 29, 1990, the Feldshers had every right to assume the $210,000 second and $50,000 third trust deeds would be retired within days as scheduled. However, on that date Greenberg extended a new loan to Razzano and recorded his $300,000 trust deed. To revive the $210,000 second trust deed which was paid off with funds provided by the Greenberg loan would be contrary to the Feldshers' agreement for the sale of their company and deprive the Feldshers of the benefit of their bargain.[5]

While the equities in this case appear more or less evenly balanced, the undisputed fact remains Greenberg had actual knowledge of all the facts

---

[5]In *Pacific Nat. Agr. Credit Corp.* v. *Wilbur* (1935) 2 Cal.2d 576 [42 P.2d 314], the Supreme Court found minor variations in a new loan would not preclude the remedy of equitable subrogation as a matter of law. There the court held a lower interest rate and new and additional security for a refinancing loan were not material changes and would therefore not

necessary to protect his interests and, unlike the Feldshers who were un-aware of Greenberg's contemplated loan, was in a position to avoid any harm. Nevertheless, despite this knowledge Greenberg failed to take any affirmative steps to protect those interests. Greenberg's actual knowledge of the crucial facts, combined with his negligence in allowing the transaction to close despite the absence of a subordination agreement, is the type of "culpable and inexcusable neglect" which justifies denial of equitable sub-rogation under the overall circumstances of this case. (*Simon Newman Co.* v. *Fink, supra*, 206 Cal. 143, 146; cf. *Parker* v. *Tout* (1929) 207 Cal. 590, 592 [279 P. 431] [bank entitled to equitable subrogation because it "exercised every precaution to protect its rights and was not negligent or careless in releasing the first trust deed and had no notice or knowledge of the mechan-ic's lien when it satisfied its first lien and accepted a renewal note"].)

Accordingly, we conclude, the trial court did not err in granting summary judgment to the Feldshers.

### DISPOSITION

The judgment is affirmed. Each side to bear its own costs on appeal.

Lillie, P. J., and Woods (Fred), J., concurred.

A petition for a rehearing was denied February 29, 1996, and appellant's petition for review by the Supreme Court was denied May 22, 1996.

---

prevent the lender from asserting the doctrine of equitable subrogation. (2 Cal.2d at pp. 587-588.)

Without citation of authority the court in *Smith* v. *State Savings & Loan Association, supra,* 175 Cal.App.3d 1092, 1096-1097 took the matter a step further. The *Smith* court found variations in interest rate, duration, and in some instances loan amount, from the terms agreed to by the parties for subordination were not sufficiently material to preclude the application of equitable subrogation. This aspect of *Smith* has been criticized as "inequitable to the junior lienor to give priority to a new lien that 'substantially' varies from the terms of the agreement." The commentator notes the "terms were negotiated by the parties and in the give and take of negotiations, the benefit of these terms to the junior lienor may have been improved or reduced in consideration for the terms of subordination. More importantly, the contracted-for terms had an effect on the value of the junior lienor's security, and if the terms of the new loans vary 'substantially,' there could be a detrimental effect on the value of his security. . . ." (3 Miller & Starr, Cal. Real Estate (2d ed. 1975) § 8.94, pp. 451-452, fn. 60.)

In the present case the only terms on which the Feldshers agreed to subordinate their trust deed was to a new *first* trust deed in an amount not to exceed $250,000. A new second trust deed to replace the original second trust deed at the point the original second trust deed matured must be considered a material variation from the parties' agreement under the rationale of either *Smith, supra,* or *Pacific Nat. Agri. Credit Corp., supra.*