Filed 1/31/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ELBERT BRANSCOMB,<br>     Plaintiff and Respondent,<br>v.<br>JPMORGAN CHASE BANK N.A. et al.,<br>     Defendants and Appellants. | A137140<br><br>(Marin County<br>Super. Ct. No. CIV093705) |
| ELBERT BRANSCOMB,<br>     Plaintiff and Respondent,<br>v.<br>JPMORGAN CHASE BANK N.A. et al.,<br>     Defendants and Appellants. | A138144<br><br>(Marin County<br>Super. Ct. No. CIV093705) |

This appeal arises from a dispute as to the amounts and priorities of deeds of trust the parties hold against real property in San Rafael. The trial court ruled plaintiff Elbert Branscomb's $100,000 deed of trust, which originally was in third position, should be reformed to reflect an indebtedness of $500,000, and is the first-position lien. On appeal, defendants JPMorgan Chase Bank, N.A. (Chase) and MMB,[1] whose liens were in first and second positions when plaintiff made his loan, contend the court erred by ruling they were not entitled to lien priority under the doctrine of equitable subrogation, and were not

---

[1] "MMB" includes defendants MMB First Mortgage Fund, LP; MMB First Mortgage Fund II, LP; Joseph Floyd, Trustee of Floyd Construction Profit Sharing Trust; Charles J. Flynn, Jr., Self-Employed Profit Sharing Plan; Martha I. Pelletier, Trustee of the Martha I. Pelletier Revocable Trust, U/A dated August 29, 1989; and Flynn MMB Mortgage Fund, LLC. We refer to Chase and MMB collectively as the lender defendants.

1

bona fide encumbrancers entitled to preclude reformation of the amount of plaintiff's deed of trust.

We conclude the court erred in denying equitable subrogation, and we reverse the judgment and an associated cost award. We do not address the lender defendants' challenge to the bona fide encumbrancer ruling, or their challenge to an award of attorney fees against the borrower, defendant Navjot, LLC (Navjot).

## I. BACKGROUND

### A. Plaintiff's Loan to Navjot

Navjot owned real property at 355 Canal Street in San Rafael (the property). In a 2005 refinance, Navjot obtained a loan from Washington Mutual Bank (WaMu) for $5.1 million secured by a first deed of trust on the property.[2] In 2006, MMB gave Navjot a loan for $1.1 million secured by a second position deed of trust on the property. In May 2007, Navjot obtained a loan from plaintiff for $500,000 through plaintiff's agent, defendant Kirtikumar Menon. This is the loan at issue here.

Plaintiff testified the $500,000 loan to Navjot was to be a "very short-term bridge loan" secured by a junior lien to allow Navjot to refinance. The May 14, 2007, note provided the full amount plus interest was due on June 4, 2007. The deed of trust securing the note specified a loan amount of $100,000 instead of $500,000, and was not recorded until three months later, in August 2007. The trial court found this discrepancy was due to Menon's negligence in preparing the documents. Plaintiff did not notice the discrepancy in the amounts when he signed the documents, and he was unaware the deed of trust was not recorded at close of escrow. Plaintiff knew his deed of trust was junior, but thought it was in second position. He did not verify the lien's priority or know it was in third position.

Earlier in 2007, Menon had obtained loans with plaintiff's funds in other deals, one for $700,000 and another for $100,000. Plaintiff understood all three loans were

---

[2] The initial 2005 loan was from Commercial Capital Bancorp, which WaMu purchased in 2006. In 2008, WaMu was placed in receivership of the Federal Deposit Insurance Corporation (FDIC), and Chase acquired the loan from the FDIC.

high-risk, " 'hard money' " loans, and they were to pay 10 percent interest.  The $700,000 loan, the first one Menon presented to plaintiff, ended up funding without plaintiff's authorization when Menon signed the funding documents.  Plaintiff chastised Menon, but continued to work with him.

**B.      The WaMu and MMB Refinance Transactions**

In December 2007, WaMu made a new loan to Navjot in approximately the same amount as its earlier loan.  The loan proceeds paid off the existing WaMu loan, and the new loan was secured by a new deed of trust.  WaMu's escrow instructions required that its new deed of trust be in first position.

In a separate transaction with a separate escrow, Navjot obtained a modified loan from MMB in the same amount of $1.1 million.  MMB required that the deed of trust securing the loan remain in second position behind the WaMu lien.

A preliminary title report dated August 29, 2007, did not list plaintiff's $100,000 lien because the deed of trust was not recorded until August 30, 2007.  An updated preliminary report in November 2007 showed plaintiff's $100,000 lien, in third position behind WaMu's and MMB's liens.  By December 2007, Navjot's payment to plaintiff was six months overdue, but plaintiff had not sought to foreclose.

When the escrow agent asked Menon for a payoff demand for plaintiff's loan, Menon signed and submitted to escrow a zero demand and request for reconveyance on behalf of plaintiff and Equity Trust Company, the custodian of plaintiff's self-directed IRA.  The trial court found Menon forged plaintiff's signature on the zero demand.  Menon also delivered the original note and original deed of trust to escrow.  Based on these documents, plaintiff's loan was not paid out of the proceeds of either refinance transaction.  However, when the existing WaMu and MMB liens were removed and the new deeds of trust recorded, plaintiff's lien was not reconveyed and remained on the record.  As a result, the record title for the property reflects plaintiff's lien is in first position; the liens held by the lender defendants are in second and third positions.

3

**C. Trial Court Proceedings**

After Chase began foreclosure proceedings, plaintiff filed the present action in July 2009. Defendants Menon, Navjot and Surinder Sroa (Navjot's principal) declared bankruptcy. The trial court sustained without leave to amend the demurrers of the escrow company and the escrow officer, concluding plaintiff had failed to show any basis for holding them liable.

A bench trial proceeded against the lender defendants for reformation and judicial foreclosure. The lender defendants argued (1) their liens had priority over plaintiff's lien under the doctrine of equitable subrogation, and (2) they were bona fide encumbrancers, so the amount of plaintiff's deed of trust could not be reformed from $100,000 to $500,000.

After the three-day trial, the court held the lender defendants were not bona fide encumbrancers, and plaintiff was entitled to have his deed of trust reformed to reflect the amount of the debt was $500,000. The court also ruled the lender defendants were not entitled to equitable subrogation, so plaintiff's trust deed was in first position. The court based these rulings in part on its conclusion the lender defendants had actual and constructive notice of plaintiff's lien. The court also concluded the escrow holder mishandled the refinance escrows. The court ruled plaintiff was entitled to judicial foreclosure, entered judgment in his favor, and awarded him attorney fees against Navjot and costs against the lender defendants.

The lender defendants appealed the judgment (case No. A137140) and the award of fees and costs (case No. A138144). Pursuant to the parties' stipulation, we consolidated the appeals.

## II. DISCUSSION

**A. Equitable Subrogation**

The lender defendants argue the trial court erred in denying equitable subrogation. The Supreme Court has stated the general rule applicable to a lender's entitlement to equitable subrogation as follows: " 'One who advances money to pay off an encumbrance on realty at the instance of either the owner of the property or the holder of

4

the incumbrance, either on the express understanding, or under circumstances from which an understanding will be implied, that the advance made is to be secured by a first lien on the property, is not a mere volunteer; and in the event the new security is for any reason not a first lien on the property, the holder of such security, if not chargeable with culpable and inexcusable neglect, will be subrogated to the rights of the prior encumbrancer under the security held by him, unless the superior or equal equities of others would be prejudiced thereby, and to this end equity will set aside a cancellation of such security, and revive the same for his benefit.' [Citations.]" (*Simon Newman Co. v. Fink* (1928) 206 Cal. 143, 146 [273 P. 565]; *JP Morgan Chase Bank, N.A. v. Banc of America Practice Solutions, Inc.* (2012) 209 Cal.App.4th 855, 860 [147 Cal.Rptr.3d 287]; *Katsivalis v. Serrano Reconveyance Co.* (1977) 70 Cal.App.3d 200, 210 [138 Cal.Rptr. 620].) Equitable subrogation thus gives effect to the intentions of the parties. (*JP Morgan Chase Bank, N.A. v. Banc of America Practice Solutions, Inc., supra,* 209 Cal.App.4th at p. 860.)

The doctrine of equitable subrogation invokes the trial court's equitable jurisdiction, and, to the extent the court exercised its discretion and balanced the equities of the parties, we review its decision for abuse of discretion. (*Dieden v. Schmidt* (2002) 104 Cal.App.4th 645, 654 [128 Cal.Rptr.2d 365].) To the extent the court determined questions of law or applied the law to undisputed facts, we review those determinations de novo. (See *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799–800 [35 Cal.Rptr.2d 418, 883 P.2d 960].)

Because courts look with favor on equitable liens (*Katsivalis v. Serrano Reconveyance Co., supra,* 70 Cal.App.3d at p. 211), equity will generally "give a lender the security for which he bargained in the situation where there is a mistake or fraud with respect to an intervening right which cuts off a preexisting encumbrance which has been satisfied by the loan proceeds." (*Id.* at p. 213; *JP Morgan Chase Bank, N.A. v. Banc of America Practice Solutions, Inc., supra,* 209 Cal.App.4th at p. 861.) Here, WaMu paid off the 2005 first deed of trust on Navjot's property at its request, and was to receive a new first deed of trust on the property in return. Similarly, MMB advanced funds to

Navjot and modified its loan at Navjot's request, and was to receive a new second deed of trust on the property in return for the modification and its reconveyance of the 2006 second deed of trust. For his part, plaintiff knew when he made his loan to Navjot that it would be secured by a junior lien on the property; he did not expect to receive a first-position lien. Under these circumstances, the lender defendants are entitled to equitable subrogation unless they are chargeable with culpable and inexcusable neglect, or superior or equal equities on plaintiff's part would be prejudiced by granting the lender defendants equitable subrogation. (See *Simon Newman Co. v. Fink, supra,* 206 Cal. at p. 146; *JP Morgan Chase Bank, N.A. v. Banc of America Practice Solutions, Inc., supra,* 209 Cal.App.4th at p. 861.)

The trial court concluded the lender defendants were not entitled to equitable subrogation because they had actual knowledge of plaintiff's lien, are responsible for the escrow officer's negligence, and have a cause of action against the escrow. We conclude these were not proper bases for denying equitable subrogation, and we hold the doctrine applies in this case.

### 1. Knowledge of Plaintiff's Lien

The trial court concluded equitable subrogation was not available because the lender defendants had actual knowledge of plaintiff's lien.[3] In *Smith v. State Savings & Loan Assn., supra,* 175 Cal.App.3d at page 1098, the court stated: "[E]quitable subrogation will be denied to a new lender who has actual knowledge of the junior encumbrance." (But see *Copp v. Millen* (1938) 11 Cal.2d 122, 130 [77 P.2d 1093] ["some knowledge or means of knowledge of the existence of other person's [*sic*] rights in the property does not in every case preclude the court from granting" equitable relief; although evidence supported finding plaintiff mortgagee knew of unrecorded purchase contract, evidence did not show plaintiff knew or should have known the purchase

---

[3] The court also stated the lender defendants had constructive knowledge of plaintiff's lien, but constructive knowledge does not preclude equitable subrogation. (See *Smith v. State Savings & Loan Assn.* (1985) 175 Cal.App.3d 1092, 1098 [223 Cal.Rptr. 298].)

6

contract was not subject to plaintiff's mortgage]; *Lawyers Title Ins. Corp. v. Feldsher* (1996) 42 Cal.App.4th 41, 50–52 [49 Cal.Rptr.2d 542] [" 'some' knowledge of an intervening lien will not automatically preclude a party from invoking the remedy of equitable subrogation, provided the interests of the intervening lienholder are not prejudiced"].)

The evidence supports the trial court's finding the lender defendants had actual knowledge of plaintiff's $100,000 deed of trust prior to the refinance transactions. MMB's representative testified that, prior to the close of the MMB refinance transaction, MMB was aware of plaintiff's $100,000 deed of trust (which was reflected in the preliminary report), but was not aware plaintiff claimed the actual amount of the loan was $500,000. Similarly, Chase's representative acknowledged the preliminary report identified plaintiff's $100,000 lien, but testified WaMu had no knowledge of a $500,000 loan from plaintiff.[4]

We conclude the lender defendants' actual knowledge of the $100,000 deed of trust prior to the refinance transactions does not preclude equitable subrogation in the circumstances of this case. Although the lender defendants knew of the $100,000 lien, the evidence does not show they had actual knowledge the lien would remain on the property, and rise to first position, after the refinance transactions closed. To the contrary, each lender defendant required, as a prerequisite to closing the transaction, that its new deed of trust be in the same position as its prior deed of trust. Moreover, the escrow officer received from Menon, who had acted as plaintiff's agent, a zero payoff demand and request for reconveyance of plaintiff's trust deed. There is no evidence the lender defendants knew, expected, or agreed that (1) plaintiff's lien would remain on the property after the refinance transactions and rise to first position, or (2) the lender defendants would forfeit their first and second priority positions as a result of those transactions. Under these circumstances, the fact the lender defendants knew of the

---

[4] Plaintiff has pointed to no evidence the lender defendants had actual knowledge of the $500,000 loan amount.

7

existence of plaintiff's $100,000 deed of trust does not constitute culpable and inexcusable neglect precluding equitable subrogation.

*Lawyers Title Ins. Corp. v. Feldsher, supra,* 42 Cal.App.4th 41 (cited, but not discussed, by the trial court and by plaintiff) is distinguishable. In that case, the appellate court held the assignee of a new lender (Greenberg) was not entitled to be equitably subrogated to a senior lien where (1) Greenberg knew his trust deed would be junior to a previously recorded trust deed (the Feldsher trust deed) *unless* Feldsher agreed to subordinate his trust deed to Greenberg's trust deed, and (2) Greenberg allowed his loan transaction to close without taking any affirmative steps to secure a subordination agreement from Feldsher. (*Id.* at pp. 51–52, 54.) The court held "Greenberg's actual knowledge of the crucial facts, combined with his negligence in allowing the transaction to close despite the absence of a subordination agreement, is the type of 'culpable and inexcusable neglect' which justifies denial of equitable subrogation under the overall circumstances of this case." (*Id.* at p. 54.)

Here, in contrast, the lender defendants' liens were in first and second positions before plaintiff loaned money to Navjot; the lender defendants agreed to extend new loans only on the condition they receive new deeds of trust in the same positions as their existing deeds of trust; and plaintiff's agent Menon submitted a zero demand and request for reconveyance to escrow. Under these circumstances, the fact plaintiff's trust deed nevertheless was not reconveyed does not establish the type of "culpable and inexcusable neglect" by the lender defendants that would justify denial of equitable subrogation. (See *Simon Newman Co. v. Fink, supra,* 206 Cal. at p. 146.)

### 2.     The Escrow Holder's Alleged Negligence

In denying equitable subrogation, the trial court relied in part on the fact the lender defendants, unlike plaintiff, may have a cause of action against the escrow officer or the escrow company for alleged negligence. But such a potential claim does not affect the equities of the parties. (See *JP Morgan Chase Bank, N.A. v. Banc of America Practice Solutions, Inc., supra,* 209 Cal.App.4th at p. 862 [lender's potential cause of action against its title insurance company did not affect equities, because (1) there was no

guarantee such a lawsuit would succeed, (2) if the lender received the equitable subrogation to which it was entitled, there would be no loss for the title insurance company to indemnify, and (3) if sued by the lender, the title insurance company might be entitled to assert lender's right to equitable subrogation]; *Katsivalis v. Serrano Reconveyance Co., supra,* 70 Cal.App.3d at p. 213.)

The trial court also stated generally that the lender defendants, as principals, are responsible for the acts of the escrow holder, their agent. On appeal, plaintiff pursues this point and argues the lender defendants are responsible for negligence by the escrow holder, and are thus chargeable with culpable and inexcusable neglect. In particular, plaintiff argues the escrow officer should have investigated the discrepancy between the loan amounts shown on plaintiff's note ($500,000) and deed of trust ($100,000), and the signature on the zero demand submitted by Menon. Plaintiff also contends the lender defendants and the escrow officer should have made sure plaintiff's loan was paid.

We reject this argument and conclude the escrow holder's actions do not provide a basis for denying equitable subrogation. The escrow officer had no duty to plaintiff to protect his interests. In *Summit Financial Holdings, Ltd. v. Continental Lawyers Title Co.* (2002) 27 Cal.4th 705, 711 [117 Cal.Rptr.2d 541, 41 P.3d 548] (*Summit*), the Supreme Court explained an escrow holder is an agent and fiduciary of the parties to the escrow. "The agency created by the escrow is limited—limited to the obligation of the escrow holder to carry out the instructions of each of the parties to the escrow." (*Ibid.*) An escrow holder " 'has no general duty to police the affairs of its depositors.' " (*Ibid.*) The *Summit* court held the escrow holder in that case did not owe a duty of care to a nonparty to the escrow based on an assignment to that nonparty by another nonparty to the escrow. (*Id.* at pp. 707–708.) Similarly, the court in *Lee v. Title Ins. & Trust Co.* (1968) 264 Cal.App.2d 160, 162–163 [70 Cal.Rptr. 378], held an escrow holder has no

9

general duty to go beyond the escrow instructions and to disclose suspicious facts or circumstances.[5]

The trial court in this case dismissed the escrow officer and the escrow company as defendants, based in part on the court's conclusion those parties owed no duty to plaintiff. We decline to hold plaintiff may nevertheless rely on the escrow holder's alleged negligence as a basis for denying equitable subrogation to the lender defendants.

### 3.    Other Equitable Considerations

Plaintiff argues the equities favor him because he had no knowledge of the refinance transaction, and if he had known, he would have asked for full repayment of his $500,000 loan. But the record does not show, and the trial court did not find, that the lender defendants concealed the refinance transaction from plaintiff, or knew Menon had forged plaintiff's signature on the zero demand. (See *JP Morgan Chase Bank, N.A. v. Banc of America Practice Solutions, Inc., supra,* 209 Cal.App.4th at p. 861 [lender not chargeable with culpable and inexcusable neglect where lender did not engage in misleading conduct].) And, in assessing the impact of Menon's forgery on the balance of equities between plaintiff and the lender defendants, we note plaintiff continued to work with Menon even though Menon had signed documents without his authorization in the past.

Equitable subrogation looks to the intentions of the parties. (*JP Morgan Chase Bank, N.A. v. Banc of America Practice Solutions, Inc., supra,* 209 Cal.App.4th at p. 862; *Katsivalis v. Serrano Reconveyance Co., supra,* 70 Cal.App.3d at p. 211.) Application of the doctrine here gives the parties what they expected: the lender defendants receive the first- and second-priority liens they required as a condition of replacing their preexisting first- and second-position liens, while plaintiff's lien occupies the junior position he

---

[5] Plaintiff (relying in part on expert testimony the trial court admitted about the standard of care for escrow holders) argues the escrow company breached duties to the lender defendants or failed to follow their instructions. But plaintiff has presented no authority that he has standing to raise such a claim.

10

obtained when he made his loan.  (See *JP Morgan Chase Bank, N.A. v. Banc of America Practice Solutions, Inc., supra,* 209 Cal.App.4th at p. 862.)

For the foregoing reasons, we conclude the trial court erred in denying equitable subrogation to the lender defendants.

**B.      Bona Fide Encumbrancer Status**

In challenging the trial court's determination that plaintiff holds a $500,000 first-position deed of trust, the lender defendants argue not only that they are entitled to lien priority under the equitable subrogation doctrine, but also that the court erred in concluding they were not bona fide encumbrancers entitled to preclude reformation of the amount of plaintiff's deed of trust from $100,000 to $500,000.  (See Civ. Code, § 3399 [written contract may be reformed to express intention of the parties "so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value"]; *Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, 1251 [26 Cal.Rptr.3d 413] [bona fide encumbrancer is one who acquires a lien by paying value and without actual or constructive notice of another's rights].)  Because we conclude the lender defendants are entitled to equitable subrogation, plaintiff's deed of trust is no longer in first position.  The lender defendants do not appear to contend that reforming the amount of plaintiff's (now third-position) deed of trust from $100,000 to $500,000 will prejudice their interests.  We therefore do not address the lender defendants' challenge to the trial court's ruling reforming the amount of plaintiff's deed of trust.

**C.      Attorney Fees**

The lender defendants argue the trial court erred by granting plaintiff's motion to recover attorney fees from the borrower, Navjot.  The lender defendants state they oppose the award only because it could prejudice their interests; they argue that "if [plaintiff] ultimately prevails and forecloses in first priority position ahead of [the lender defendants], then [the lender defendants] will be prejudiced by an improper award of fees and [plaintiff's] collection of those fees upon foreclosure."  Because the lender defendants are entitled to equitable subrogation, plaintiff is not entitled to foreclose in

first priority position ahead of the lender defendants. Accordingly, we do not address the lender defendants' challenge to the award of fees against Navjot.

**D. Costs**

The lender defendants challenge the award of costs against them. Because we reverse the judgment and, specifically, the ruling denying equitable subrogation, we reverse the award of costs to plaintiff and against the lender defendants. On remand, the trial court may revisit the issue of whether, and in what amount, to award costs to any party.

### III. DISPOSITION

In case No. A137140, the judgment is reversed.

In case No. A138144, the award of costs in favor of plaintiff and against the lender defendants is reversed. The appeal from the award of attorney fees against Navjot is dismissed.

The lender defendants shall recover their costs in both appeals.

12

_____

Dondero, J.

We concur:

_____

Margulies, Acting P. J.

_____

Banke, J.

A137140 & A138144, *Branscomb v. JPMorgan Chase Bank N.A.*

13

Trial Court:                                        Marin County Superior Court


Trial Judge:                                        Honorable Lynn Duryee


Law Offices of Edward Napier Thomson, Edward Napier Thomson and Byron Benjamin Kilgore for Plaintiff and Respondent.

Bardellini, Straw, Cavin & Bupp, Lee P. Bardellini and Helen V. Powers for Defendants and Appellants.